### UNITED STATES

### v.

### Glenda JONES, 245 06 4269, Sergeant (E–5), U.S. Marine Corps.

### NMCM 89 1151R.

### U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 19 Sept. 1988.

Decided 26 Nov. 1991.

---

LT Peter Van Hartesveldt, JAGC, USNR, Appellate Defense Counsel.

LT J.C. Foster, JAGC, USNR, Appellate Government Counsel.

Before MITCHELL, FREYER and STRICKLAND, JJ.

FREYER, Judge:

This appellant, a drill instructor at the Marine Corps Recruit Depot, Parris Island, South Carolina, was found guilty, in accordance with her negotiated pleas, of violating a lawful general order by improperly associating with a recruit, committing lesbian sodomy and indecent acts with the same recruit, and wrongfully endeavoring to impede a Naval Investigative Service investigation into the affair. She was sentenced by the military judge to dishonorable discharge, forfeiture of $350.00 pay per month for 14 months, confinement for 14 months, and reduction to pay grade E-1. In accordance with the pretrial agreement, the convening authority mitigated the dishonorable discharge to a bad-conduct discharge and suspended forfeitures and confinement over 6 months.

Before entering pleas, the defense made a motion to dismiss for unlawful command influence, which was denied, the military judge finding no unlawful command influence. Because of their dissatisfaction with the military judge's treatment of the command influence motion, another panel of this Court (two of whose judges, by virtue of panel reorganizations, now participate in this decision) ordered a limited hearing in accordance with Article 39(a) and *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967), to inquire into the matter and, in so doing, set forth the procedure to be followed, *United States v. Jones*, 30 M.J. 849 (N.M.C.M.R.1990) (*"Jones I"*). That has now been accomplished, and the entire record is before us for review.

The facts giving rise to the unlawful command influence motion in this case are set forth in detail in this Court's opinion in a companion case, *United States v. Jameson*, 33 M.J. 669 (N.M.C.M.R.1991). After examining the record of the post-trial hearing in this case, as well as the record of the trial proper, we adhere to the views expressed in that opinion insofar as they apply to this case also. The events giving rise to the claim of unlawful command influence arose after the trial in *Jameson*, but before the trial in this case. As a result, the remedial considerations are different, and, not surprisingly, more extensive remedial action is required here.

■ In this case, the appellant had made an apparently voluntary sworn statement to the Naval Investigative Service confessing to the acts to which she pled guilty. This statement, which was executed before the *Jameson* trial and, thus, obviously could not have been induced by the events giving rise to the command influence issue, was introduced both at the Article 32 investigation and at trial. In addition, a witness with personal knowledge and a grant of immunity had made a written sworn statement amply corroborating the appellant's confession. This statement was introduced at the Article 32 investigation, and the substance thereof was put into a stipulation introduced at trial. Considering the improbability that good military character evi-

dence alone could have overcome the appellant's own corroborated sworn confession, we are satisfied beyond a reasonable doubt that the appellant's decision to plead guilty was determined by the evidence against her, not by any unwillingness of potential witnesses to testify in her favor, nor by any matters relating to the composition of the court, *see infra.* Appellate defense counsel has conceded as much, and, finding the pleas of guilty to have been providently and voluntarily entered, we are constrained by the principles expounded in *United States v. Thomas,* 22 M.J. 388 (C.M.A.1986), to affirm the findings of guilty based thereon.

■ We are not satisfied beyond a reasonable doubt that the adjudged sentence was not affected by unlawful command influence. Not only did this appellant receive the most severe of the sentences adjudged in all the companion cases, but, for the reasons explained in *Jameson,* the testimony at trial and in the post-trial hearing, which closely corresponds to the evidence in *Jameson,* also leads us to this belief. In addition to the evidence summarized in *Jameson,* as regards the trial proper, Defense Exhibits A and B are character witness questionnaires introduced in presentencing. Paragraph 18 asks: "State your opinion as to this Marine's general value to the Marine Corps." We note with particular interest the responses to this paragraph. In Defense Exhibit A, the response is introduced, and thus negated, by the contrary-to-fact condition: "If innocent of these charges...." In Defense Exhibit B, the response to this crucial item is simply: "No opinion." In light of the incongruity of these responses with most of the other responses in the respective questionnaires, and the other evidence discussed in *Jameson,* we have little difficulty in discerning the forces which were at work.

The foregoing relates to that portion of the command influence motion which asserted command interference with potential defense presentencing witnesses, but there is another type of command influence alleged in this case. In the same motion, the defense also complained that command ac-

tions and utterances had tainted the pool of prospective members (Tr. 8), although subsequently, when requesting trial by military judge alone after having reached a pretrial agreement with the convening authority, the appellant made no explicit assertion that her forum selection was, in fact, the product of any unlawful command influence upon the prospective members (Tr. 73–74). When asked by the military judge to define the manner in which the members had been tainted, the defense counsel made the following statement, which tracks the substance of the defense motion to dismiss (Appellate Exhibit I):

As to the members, sir, because of the adverse publicity that this has generated, the command has sent a signal to the members as to how the command looks upon this type of testimony. And the members have received that signal reading the local papers and would view any good military character evidence or any evidence as to rehabilitative potential with either less favor or as discreditable or as against some command policy.

Tr. 8.

In *United States v. Thomas,* the U.S. Court of Military Appeals addressed the classic form of command influence directed at members:

If the target is a court member or the military judge, then the tendency is to deprive the accused of his right to a forum where impartiality is not impaired because the court personnel have a personal interest in not incurring reprisals by the convening authority due to a failure to reach his intended result.

22 M.J. at 393.

Analytically, a distinction can perhaps be drawn between those cases in which the members, out of fear, self-interest, or a perceived obligation to enforce command policy, feel compelled to decide issues a particular way regardless of their own best judgement, and those cases in which the external influence actually alters the members' judgement itself, so that they are still deciding issues in accordance with their own best judgement, but only after their judgement has been altered by the external

influence. It may be so difficult to determine whether a particular case falls into one category or the other, or both, that the distinction is probably of little practical value, although it may affect whether or not the label of "command influence," as distinguished from only "improper influence," is applied. For example, in *United States v. Brice*, 19 M.J. 170 (C.M.A.1985), the members in a drug case were permitted, in the midst of trial, to hear a strongly-worded "zero-tolerance" address by the Commandant of the Marine Corps. Perhaps because there was no connection other than a temporal one between the Commandant's speech and the trial, the U.S. Court of Military Appeals expressly refrained from characterizing *Brice* as a command influence case, although the insertion of command policy into court-martial deliberations had been characterized as command influence in the past. *See United States v. Fowle*, 7 U.S.C.M.A. 349, 352, 22 C.M.R. 139, 142 (1956). *Cf., United States v. Grady*, 15 M.J. 275 (C.M.A.1983), and *United States v. McCann*, 8 U.S.C.M.A. 675, 25 C.M.R. 179 (1958).

Rather than being based on the self-interest or fear-of-reprisal rationale of *Thomas*, the defense claim at trial appears derived from one of the issues raised in the leading case of *United States v. Treakle*, 18 M.J. 646 (A.C.M.R.1984), about which the U.S. Army Court of Military Review had this to say:

> Article 37(a), Uniform Code of Military Justice, forbids coercion or unauthorized influence on the deliberations of members of a court-martial. The comments attributed to General Anderson by the member in question dealt with potential witnesses, not members of a court-martial. Nevertheless, when considered from the perspective of a court-martial member, the logical inference is that evidence of the accused's good duty performance and soldierly qualities should be discounted and that retention of a convicted accused is inappropriate. We conclude that the member in question drew that inference and understood it to be General Anderson's policy for court-martial members. By the time appellant's case was tried, the general's message had been widely disseminated within the 3d Armored Division, but no remedial measures had been undertaken. This circumstance creates at least the appearance that the other members of appellant's court-martial who were assigned to the 3d Armored Division had also heard the general's message, understood him to be discouraging favorable character testimony, and drew the same inference.
>
> As noted above, when such unlawful pressure has or appears to have been brought to bear on a member of a court-martial, the law presumes that the member was in fact influenced. This presumption is rebuttable by clear and positive evidence that no actual influence occurred. Standing alone, a member's denial that he was influenced is ordinarily insufficient to rebut the presumption.

18 M.J. at 658 (footnotes omitted).

In *United States v. Thomas*, the U.S. Court of Military Appeals apparently adopted this member-contamination theory of *Treakle*, but, at least initially, with a qualification. In *Treakle*, it was, in fact, a member who, in *voir dire*, raised the command influence issue by indicating that he had been influenced by General Anderson's remarks to draw an impermissible inference regarding potential defense presentencing evidence; whereas, in the instant case, there was no *voir dire* and, thus, no showing that any of the prospective members had drawn any impermissible inferences.[1] In *Thomas*, the court, in discussing contested cases, set forth the following

---

1. We appreciate that *voir dire* is normally conducted only after assembly, by which time the right to elect trial by military judge alone is lost. In an appropriate case, the defense should move for an opportunity to conduct *voir dire* contingent upon reserving the right to elect trial by military judge alone at the conclusion of *voir dire*. *See United States v. Morris*, 23 U.S.C.M.A. 319, 49 C.M.R. 653 (1975). If such an opportunity is denied and the accused thereafter elects trial by military judge alone, the Government will be at a distinct disadvantage in arguing that the defense has made an inadequate showing of prospective member taint by voluntarily waiving the right to conduct *voir dire*.

guidance, which it later extended to sentencing:

In determining whether an accused's trial in a contested case before court members was adversely affected by command influence, we first consider the impact that such activities and communications may have had on the court members. In this regard, we place the burden upon both defense and trial counsel, as well as the military judge, to fully question the court members during voir dire and to determine thereby whether any of the members had knowledge of the commander's comments and, if so, whether the comments had an adverse impact on the member's ability to render an impartial judgment. When required, witnesses may be called to testify on this issue. *United States v. Karlson*, 16 M.J. 469 (C.M.A.1983). However, we are not prepared to disqualify members of a court-martial panel simply because they were assigned or were in close proximity to the command where the comments were made. To do so would ignore the members' oath to adhere to the military judge's instructions and to determine the facts in accordance therewith. *Cf. United States v. Garwood*, 20 M.J. 148 (C.M.A.1985).

22 M.J. at 396.

Fifteen months later, however, the court appeared to back away from any insistence that improper influence be established on *voir dire* and also from their statement that they were "not prepared to disqualify members of a court-martial panel simply because they were assigned or were in close proximity to the command where the comments were made." In *United States v. Levite*, 25 M.J. 334 (C.M.A.1987), after first commenting that the extent of the command influence in that case and its impact on Levite's court-martial had not been developed in the record, the court wrote:

Second, we find that the command lectures on the concept of the "total soldier" and briefings on appellant's alleged background as a panderer and a knife-wielding assailant polluted the environment in which his trial was held. Word travels fast in the military, and these actions, in view of their specificity and content, were so damaging as to render remote the possibility of a fair trial at that time. *United States v. Brice*, 19 M.J. 170, 172 (C.M.A.1985). *See* Mil. R.Evid. 404 and 403, Manual for Courts-Martial, United States, 1984. Without an informed voir dire of the members, we cannot be sure appellant's case was presented to an untainted court.

25 M.J. at 339–40.

In light of the failure of the record in *Levite* to document any actual and specific influence on the members through *voir dire* or otherwise, it would appear that the test suggested by the above quotation from *Thomas* has been replaced by a less stringent "presumptive-taint" test which may be satisfied by showing that there was a "polluted environment," and that the members were immersed therein. The latter test may be deemed not inconsistent with the allocation of the burdens of proof and persuasion in command influence cases prescribed in *Thomas* and *Treakle*, about which we commented extensively in *Jones I* and *Jameson*.

In this case, there is considerable evidence to indicate that the "firings" of Sergeant Hilinski and Staff Sergeant Gurule, together with the reasons therefor, which this Court ruled illegal in *Jameson*, were widely known in the convening authority's command through word-of-mouth, an address by the Fourth Recruit Training Battalion commanding officer, and articles in the local press, which included quotations from official Depot spokespersons, all of which tended to impress upon the community, including prospective members, that any testimony expressing tolerance for the appellant's actions or envisioning even a possibility that a person in the appellant's predicament could ever continue in a position involving contact with recruits was both "disloyal" to the U.S. Marine Corps and so discreditable as to justify the witness' own removal from a position of responsibility. Because the appellant elected trial by military judge alone, however, no *voir dire* was conducted.

An obvious difference between *Treakle* and *Levite* on the one hand, and the instant case on the other, is that Treakle and Levite were sentenced by members, whereas the appellant was sentenced by a military judge alone. In a supplemental pleading, appellate defense counsel seeks to negate this distinction by inviting our attention to the recent decision in *United States v. Hilow*, 32 M.J. 439 (C.M.A.1991).

*Hilow* is a command influence case because it involved an attempt by command personnel to influence court-martial sentences by submitting to the convening authority the names of only those prospective members believed to be severe in military justice matters. Even though each nominee individually might have been entirely qualified to sit as a member if selected upon proper criteria, the manner of selection resulted in a tainted pool. *Hilow*, therefore, seems to present what has been described as a "structural defect." *See Hilow*, 32 M.J. at 444 (Cox, J., dissenting in part). Since structural defects typically warrant reversal on grounds of general prejudice, *see Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (error in indictment by an unconstitutionally composed grand jury is not avoided by a subsequent fair trial before a properly composed petit jury); *see also United States v. Webster*, 24 M.J. 96 (C.M.A.1987) (error in denying timely request for trial by military judge alone is not remedied by fair trial before members nor by reassessment of sentence), the *Hilow* majority could probably have decided the case on grounds of general prejudice. Instead, they proceeded to identify a nexus between the accused's election of trial by military judge alone and the improper detail of court members. Consequently, reversal could not be not avoided by Hilow's election of trial by military judge alone, when the only alternative was trial by the tainted pool.

In *Hilow*, however, there was actual, direct proof that the panel against which the accused elected trial by military judge alone was tainted. In the instant case, there is no such proof, but it may, nevertheless, be argued, in light of *Levite*, and because of the rules regarding allocation of the burdens of proof and persuasion in command influence cases, that evidence of "environmental pollution," if sufficient to render reasonable the conclusion that the members' pool was tainted by command influence, should, in the absence of clear and positive evidence to the contrary from the Government, be an adequate substitute for the actual, direct proof in *Hilow*. With regard to nexus, the appellant's command influence motion can be read as implying it, and the sequence of events cited by the *Hilow* majority as tending to show nexus in that case (referral to the tainted court, followed by entry into a pretrial agreement without reference to trial by judge alone, followed by a request for trial by judge alone submitted on the first day of trial) [2] was replicated in this case.

On the other hand, it may be argued that, in order to prevail where a fair trial was had before a military judge alone, the accused ought to be required to demonstrate, at least by a preponderance of the evidence, the fact that the pool of members was tainted, not merely a reasonable possibility that the pool may have been tainted, since any lesser requirement would result in building a speculation as to the accused's forum choice upon a mere, albeit reasonable, possibility of taint, and a speculation founded upon a possibility would constitute too insubstantial a basis for relief.

However interesting the issues raised by the second prong of the command influence motion may be, we need not decide them here, because our decision as to relief is dictated by our reasonable doubt that the adjudged sentence was not adversely affected by command influence affecting defense presentencing witnesses, which was reasonably raised by the defense but not disproved by the Government by clear and positive evidence. We have taken the trouble to discuss this second prong of the command influence motion at length, however, in order to impress on parties to similar cases in the future (which we hope do not occur) the nature of the showing we

---

**2.** 32 M.J. at 443.

expect to see in order to raise and litigate such a claim properly.

█ The convening authority substantially reduced the impact of the adjudged sentence in accordance with a pretrial agreement, so that the operative sentence in this case, after expiration of the suspension period, is now the lightest of all the companion cases (although one of those cases [*Baum*], in which the findings and sentence were set aside by this Court for the erroneous overruling of challenges for cause, has not been retried). As noted in *United States v. Levite*, however, a post-trial reduction in sentence is no substitute for a fair trial.[3] Moreover, although *Thomas* apparently authorizes the remedy of reassessment in appropriate cases, we believe that any attempt to reassess this tainted sentence would be speculative at best and, therefore, not in accord with the principles set forth in *United States v. Sales*, 22 M.J. 305 (C.M.A.1986). As the U.S. Court of Military Appeals recently observed:

> When an error occurs at trial that impacts on the accused's sentence, the accused is entitled to be made whole on appeal. Thus, if appellate authorities confidently can discern the extent of the error's effect on the sentencing authority's decision, then the sentence can be adjusted accordingly. If, however, the extent of the error's effect is more ambiguous, the sentencing proceeding must be conducted again. *United States v. Sales*, 22 MJ 305 (CMA 1986). In no instance, however, may an appellate authority substitute its own judgment as to the appropriateness of the sentence, notwithstanding the error and its effect on the sentencing authority in arriving at that sentence. *United States v. Suzuki*, 20 MJ 248 (CMA 1985).

*United States v. Reed*, 33 M.J. 98, 99 (C.M.A.1991).

In consonance with the foregoing and the decisional rules laid down in *United States v. Thomas*, the findings of guilty are affirmed; the sentence is set aside. The record is returned to the Judge Advocate General for transmission to an appropriate general court-martial convening authority, who may order a rehearing on the sentence or, in his discretion, approve a sentence of no punishment. *Cf. United States v. Montesinos*, 28 M.J. 38, 47 (C.M.A.1989). In either event, the record will be returned to this Court for completion of appellate review. *See Boudreaux v. U.S. Navy–Marine Corps Court of Military Review*, 28 M.J. 181 (C.M.A.1989).

Senior Judge MITCHELL and Senior Judge STRICKLAND concur.