**UNITED STATES**

v.

**Weston S. MEEK, 271–84–0004 Hull Maintenance Technician Second Class (E–5), U.S. Naval Reserve.**

**NMCM 91 02664.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 17 June 1991.

Decided 21 July 1994.

---

LT Alice B. Lustre, JAGC, USNR, Appellate Defense Counsel.

LT Steven J. Coaty, JAGC, USNR, Appellate Government Counsel.

Before LARSON, C.J., WELCH, Senior Judge, and McLAUGHLIN, J.

LARSON, Chief Judge:

Pursuant to his pleas, the appellant was convicted at special court-martial, military judge sitting alone, of unauthorized use of a government vehicle and multiple larcenies, in violation of Articles 92 and 121, respectively, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 921. On appeal, in a summary assignment of error, he claims that the military judge erred by failing to dismiss the charges against him because of misconduct by the original trial counsel.[1] Although we find instances of over-reaching and inappropriate behavior by the trial counsel (TC), as well as certain improprieties by the originally detailed defense counsel (DC), we hold that the appellant suffered no prejudice as a result.

The events in question unfolded at the Naval Legal Service Office Detachment, Kings Bay, Georgia, where witnesses had gathered for trial. The civilian defense counsel (CDC) was interviewing the appellant and his wife when the DC entered the office and profanely declared that the CDC was ineffective, had not talked to the witnesses, and that

he [DC] would "have no part of it."[2] The DC was quickly followed into the office by the TC, who, in agreeing with the DC and stating to the appellant that the CDC was "misrepresenting" him, rudely ordered the appellant's wife out of the office, and engaged the appellant in an unseemly verbal dispute. Record at 203. During the tumultuous pretrial preparation period, the TC had also told most of the defense witnesses, who were gathered to be interviewed by the defense, that the appellant was "trying to worm out of the court-martial," or words to that effect. Furthermore, in an awkward arrangement, the TC forbade the CDC from using the appellant or his wife to summon the witnesses from the waiting area without her assistance or the assistance of a chief petty officer or secretary assigned to the Detachment. In addition, the TC provided legal counsel to one defense witness (F)—who had been punished under Article 15, UCMJ, 10 U.S.C. § 815, for aiding and abetting the appellant—regarding his concerns that he might face additional punishment. Finally, the TC contacted a defense-requested witness (B) and, in interviewing him, threatened and intimidated him by telling him he should be afraid to come to the trial site and talk with uniformed personnel because he would face a court-martial.

Ultimately, both the TC and the DC were replaced by other counsel before pleas were entered, the latter at the request of the appellant and the former because she had been transferred to another command. Record at 219. The CDC and newly detailed defense counsel moved to dismiss the charges as a result of prosecutorial misconduct arising primarily from the factual scenario set forth above. The military judge took extensive testimony on the issue[3], entered findings, and ultimately denied the motion. In particular, after stating that "I want

---

1. Although the appellant pleaded guilty, this issue is preserved for appeal because he entered a conditional plea pursuant to Rule for Courts–Martial 910(a)(2).

2. The DC's outburst apparently was the result of ongoing dissatisfaction with the performance of his civilian co-counsel concerning the general subject of pretrial preparation. Record at 52.

3. The military judge is commended for the thorough and sensitive manner in which he exorcised this proceeding of the potentially harmful effects of combative behavior by overly aggressive counsel.

to know if these witnesses feel they are intimidated in dealing with the defense and, if they are, I'm going to set it straight right now," (Record at 83) the judge brought *all* but one of the witnesses, who could even remotely have been touched by the pretrial conduct of the TC, to the stand. He thoroughly established that the witnesses understood that they were to speak freely and truthfully to the appellant and his counsel without fear of repercussion. The military judge found that "because there has been *absolutely* no prejudice to the accused whatsoever in this case, the motion [to dismiss for prosecutorial misconduct] is denied." Record at 231. His other findings include the following:

1. Any requirement the TC placed on witnesses to notify command personnel of their whereabouts was designed to ensure control of the witnesses in the building or to explain sequestration rules to the witnesses regarding testimony and no prejudice resulted.

2. The TC's order for appellant's wife to leave the office used by civilian defense counsel was improper, but no prejudice resulted.

3. TC's comments regarding civilian counsel's inadequate preparation were not intended to influence the appellant's decision as to employment of counsel and had no such effect.

4. TC's comment in front of several witnesses that appellant "was trying to worm out of this trial" was improper, but was made out of frustration, not intending to influence and not actually influencing the witnesses to the detriment of the appellant.

5. TC's legal counsel to witness [F] that, notwithstanding his having received nonjudicial punishment under Article 15, UCMJ,

10 U.S.C. § 815 as an aider and abettor to appellant, he could still be court-martialled for the same offense was not improper. [The military judge found that this was advice regarding the lack of a need for immunity.]

6. TC's comments over the telephone to out-of-state defense witness [B], whose appearance was at first opposed by the Government, regarding his own possible court-martial through the Navy Reserve were improper and should not have been made, but no prejudice resulted.

*Id.* at 230–31.

█ A trial counsel acting on behalf of the United States and as an officer of the court is duty bound to protect an accused's right to a fair trial and to ensure that justice is done. *United States v. Freemen,* 28 M.J. 789, 795 n. 8 (N.M.C.M.R.1989) (quoting *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935)). The proper standard by which to review allegations of prosecutorial misconduct is whether they are so egregious as to deny the accused a fair trial. *United States v. Hernandez,* 779 F.2d 456 (8th Cir.1985); *United States v. Sloan,* 30 M.J. 741 (A.F.C.M.R.), *petition denied,* 32 M.J. 41 (C.M.A.1990).

█ Our first task is to determine whether counsel's behavior amounted to prosecutorial misconduct. The specific instances of conduct by the TC found to be improper by the military judge fall into the broad category of attempting to limit defense access to witnesses through intimidating or improperly influencing the witnesses. The military judge found, and we agree, that the TC's comment to defense witness (B)—to the effect that he would risk court-martial himself should he appear to testify at the appellant's court-martial—was inappropriate.[4] Whether or

4. In his concurrence, Judge McLaughlin attaches the label of unlawful command influence to this incident of witness intimidation. While the basic symptom may be the same, I do not believe it rises to that level. In this case, no one with command authority did anything improper. Only the lawyers were involved in this unsightly display and, in contrast to those who are usually at fault in a case of unlawful command influence, they were all subject to the direct authority and control of the military judge. He was in a posi-

tion to assess their behavior and rein them in, and he did a masterful job at that. *Compare United States v. Stroup,* 29 M.J. 224 (C.M.A.1989) (where the military judge allowed the trial counsel to run amuck). Intimidation by those in command or by their subordinates is usually more insidious and has adverse consequences far beyond the immediate court-martial. Furthermore, it can take the form of disguised retaliation, for example through performance evaluations, and in other ways too subtle and remote to

not the comment was calculated to intimidate the witness, it is clear that it was likely to do so.[5] Similarly, the TC's off-hand comment to the assembled defense witnesses that the appellant was trying to "worm" his way out of court-martial was improper. It conveyed her negative, personal, and totally irrelevant opinion of the appellant to witnesses called to testify on his behalf and had the potential to improperly influence their testimony. While the TC's behavior may not have violated the literal words of the rule for professional conduct that concerns fairness to opposing party and counsel, it was certainly not consistent with the spirit behind the rule. *See* Rule 3.4, Rules for Professional Conduct, Judge Advocate General Instruction 5803.1 of 26 October 87.

We now must address the issue of prejudice.[6] We note that the appellant pleaded guilty pursuant to a pretrial agreement and called no witnesses during the presentencing portion of his court-martial. In view of the military judge's thorough "cleansing" of the potential witnesses of any possible ill effect of the TC's comments to them, the witnesses' assurances on the record that they would testify truthfully if called, the fact that the TC was ultimately replaced, and finally, the fact that the appellant chose not to call any of the witnesses to testify on his behalf, we find that he was not denied a fair trial or caused to suffer any other form of prejudice by the improprieties of the TC. Accordingly, this assignment of error has no merit. Likewise, the remaining assignment of error has

been decided adversely to the appellant's position. *United States v. Mitchell,* 39 M.J. 131 (C.M.A.1994).

Before we leave this case, we feel compelled to comment upon the unfavorable impression of Navy judge advocates at work arising from the pretrial turmoil in this case. As part of his motion to dismiss for prosecutorial misconduct, the defense introduced evidence of the scene described in the opening paragraphs of this opinion where the DC and TC in apparent agreement disparaged the pretrial efforts of the CDC in the presence of the appellant and his wife. Record at 202–204. Aside from the basic rudeness in this scenario, what concerns us is the impression an accused (not to mention other interested observers) is left with after seeing the counsel assigned to defend him and the counsel assigned to prosecute him join together to castigate his civilian counsel. Even if his dissatisfaction with co-counsel were fully justified, the detailed defense counsel was totally out of line in airing his disagreement *publicly* and in company with the TC. It is difficult enough under normal conditions at some of the smaller offices in the Naval Legal Service Command to maintain the appearance of loyalty to opposing clients and to disabuse observers of the appearance of collusion that can arise when opposing counsel work side by side. Incidents like this only undermine the otherwise vigilant and sensitive efforts of our fine young judge advocates to remain true to their representational

lead to easy detection and redress by the military justice system. To invoke the spectre of unlawful command influence in this case and thereby trigger the severe protective mechanism established by case law to excise that demon, *see United States v. Jones,* 30 M.J. 849 (N.M.C.M.R.1990), *aff'd on subsequent review,* 33 M.J. 1040 (N.M.C.M.R.1991), would be to elevate the matter far beyond what it deserves.

**5.** By contrast, the military judge found that the TC's warning to another potential defense witness (F) as to the incriminating nature of his anticipated testimony was not improper. The distinction apparently found by the military judge is that witness (F) himself expressed dismay at the prospect of facing court-martial should he testify at the appellant's court-martial even though he had already been punished under Article 15, UCMJ, for his misconduct. The TC's

action in confirming that the possibility of prosecution still existed was made only in response to his concerns and in the context of discussion of a grant of immunity. Record at 231. We agree with the judge's assessment but would add that the better practice would have been for the TC to refer witness (F) to an uninvolved defense counsel for advice.

**6.** We have not addressed the other forms of misconduct alleged by the appellant in his pretrial motion, Appellate Exhibit XIX. The remaining instances, e.g., the TC's order to the appellant's wife to leave his office and the TC's forbidding the appellant from summoning a witness without going through her, while somewhat heavy-handed and not to be admired, do not rise to the level of prosecutorial misconduct. We agree with the military judge's assessment of the impact of this behavior.

duties in accordance with the rules of professional conduct.

Accordingly, the findings of guilty and sentence, as approved on review below, are affirmed.

Senior Judge WELCH concurs.

McLAUGHLIN, Judge (concurring):

I concur in the result. I write separately to express my opinion that this prosecutorial misconduct, at least in the unfounded threat to court-martial an out-of-town defense-requested witness, constituted unlawful command influence. *United States v. Thomas,* 22 M.J. 388 (C.M.A.1986). In *Thomas,* Chief Judge Everett stated:

> The exercise of command influence tends to deprive servicemembers of their constitutional rights. *If directed against prospective defense witnesses,* it transgresses the accused's right to have access to favorable evidence. If directed against defense counsel, it affects adversely an accused's right to effective assistance of counsel.

22 M.J. at 393 (emphasis added). Article 37(a), UCMJ, 10 U.S.C. § 837, titled: **Unlawfully influencing action of court,** clearly states, in part:

> No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence the action of a court-martial ... in reaching the findings or sentence in any case. ...

I see no phrase "except trial counsel in a case" or "except lawyers" or "only the chain of command" and decline to presume such exceptions. The misconduct of this prosecutor is an unlawful attempt to influence the findings and sentence of the court-martial. Experience allows me to observe that if this type of threat had been made by the appellant in a call to a Government witness, charges of obstructing justice would have been added to the charge sheet with unbounded alacrity. My point being, unlawful actions by counsel should be labelled, analyzed, and acted upon in common terms applicable to servicemembers generally, as well as the special terms applicable to the higher norms expected of counsel as officers of the court.

In concluding that there was unlawful influence present in this case, I join my brothers in commending the energy and thoroughness of the military judge in extinguishing all, if any, impact of this misconduct well before trial—*beyond a reasonable doubt. United States v. Jones,* 30 M.J. 849, 854 (N.M.C.M.R.1990), *aff'd on subsequent review,* 33 M.J. 1040 (N.M.C.M.R.1991).