UNITED STATES, Appellee

v.

Weston S. MEEK, Hull Maintenance
Technician Second Class, U.S.
Navy, Appellant.

No. 94–1350.
CMR No. 91–2664.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 4, 1995.

Decided April 4, 1996.

For Appellant: *Lieutenant Commander Howard B. Goodman, JAGC, USN* (argued); *Lieutenant Bradford A. Bleier, JAGC, USNR* (on brief).

For Appellee: *Lieutenant S.J. Coaty, JAGC, USNR* (argued); *Colonel J. Composto, USMC, and Commander S.A. Stallings, JAGC, USN* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

Appellant was tried by a special court-martial composed of a military judge sitting alone at Naval Submarine Base, Kings Bay, Georgia, during April and June of 1991. In accordance with conditional pleas, he was convicted of stealing various pieces of property of the United States (3 specifications) and of violating a lawful order by using a government vehicle for personal reasons, in violation of Articles 121 and 92, Uniform Code of Military Justice, 10 USC §§ 921 and 892, respectively. He was sentenced to a bad-conduct discharge, confinement and forfeiture of $500.00 pay per month for 6 months, and reduction to pay grade E–1. The convening authority approved this sen-

1. *See* 41 MJ 213, 229 n. * (1994).

tence on September 20, 1991, but suspended all confinement for 6 months with provision for automatic remission. A new convening authority action, to the same effect, was issued on April 2, 1993. The Court of Military Review [1] affirmed. 40 MJ 675 (1994).

On January 25, 1995, this Court granted review on the following issue personally raised by appellant:

WHETHER THE COURT OF MILITARY REVIEW ERRED IN FAILING TO DISMISS THE CHARGES AFTER FINDING PROSECUTORIAL MISCONDUCT.

We hold that the Court of Military Review did not err in affirming appellant's conviction because of the curative actions taken by the military judge at the trial below. *See United States v. Rushatz*, 31 MJ 450, 457–58 (CMA 1990); *United States v. Jackson*, 41 F.3d 1231, 1233 (8th Cir.1994) (no prejudice where District Court took prompt remedial action).

The Court of Military Review in its opinion detailed the facts giving rise to the granted issue, as follows:

The events in question unfolded at the Naval Legal Service Office Detachment, Kings Bay, Georgia, where witnesses had gathered for trial. The civilian defense counsel (CDC) was interviewing the appellant and his wife when the *DC [military defense counsel] entered the office and profanely declared that the CDC was ineffective, had not talked to the witnesses, and that he [DC] would "have no part of it." The DC was quickly followed into the office by the TC [trial counsel], who, in agreeing with the DC and stating to the appellant that the CDC was "misrepresenting" him, rudely ordered the appellant's wife out of the office, and engaged the appellant in an unseemly verbal dispute.* Record at 203. During the tumultuous pretrial preparation period, the TC had also told most of the defense witnesses, who were gathered to be interviewed by the defense, that the appellant was "trying to worm out of the court-martial," or words to that effect. Furthermore, in an awkward arrangement, the TC forbade the

CDC from using the appellant or his wife to summon the witnesses from the waiting area without her assistance or the assistance of a chief petty officer or secretary assigned to the Detachment. In addition, the TC provided legal counsel to one defense witness (F)—who had been punished under Article 15, UCMJ, 10 USC § 815, for aiding and abetting the appellant—regarding his concerns that he might face additional punishment. *Finally, the TC contacted a defense-requested witness (B) and, in interviewing him, threatened and intimidated him by telling him he should be afraid to come to the trial site and talk with uniformed personnel because he would face a court-martial.*

40 MJ at 676 (emphasis added).

At a session under Article 39(a), UCMJ, 10 USC § 839(a), prior to this court-martial, civilian defense counsel moved to dismiss the charges because of "prosecutorial misconduct." He stated in his written motion:

5.

Cognizant of this [civilian counsel's serious health problems], the detailed trial counsel, LT Simmons, acted in an improper manner designed to frustrate Mr. Crudup in his efforts to interview witnesses, by stating to those witnesses that they could not talk to the accused nor his civilian counsel without first going through her.

6.

LT Simmons also stated that if any witness talked to the accused or his civilian attorney without first getting her permission, they would be court-martialed.

7.

Trial counsel also referred to the accused as "a worm" when addressing all of the witnesses, to include XX–1 James Carr, XX–1 Tim Swartz, EM3/E–4 Merrike (USS Oakridge, Charleston, S.C.) [,] Chief Lienhardt, and Michael Costello: further stating that the accused was simply trying to worm out of this court-martial, which said actions by the trial counsel being spe-

cifically designed to prejudice these witnesses against the Accused.

8.

Trial Counsel also colluded with the then detailed defense counsel, LT McConnell, by meeting with trial counsel in her office and contacting defense witnesses together by telephone. Said action gives rise to the appearance of impropriety and wrongdoing, all to the prejudice of the accused.

9.

*That both the trial counsel and the then detailed defense counsel, in the presence of the accused [,] stated that Mr. Crudup, a trial lawyer of thirty-six years standing, and scores of courts-martial proceedings, was ineffective, and thus attempted to prejudice the accused against his civilian attorney.*

10.

Trial counsel prevented the accused's civilian attorney from interviewing a witness by ordering the witness out of the office when Mr. Crudup was attempting to interview him, all to the specific and direct prejudice of the accused.

11.

*That the actions of trial counsel were designed and have resulted in the defense witnesses being frightened and intimidated.*

12.

That the actions of the trial counsel and the then detailed defense counsel, LT McConnell, were willfully and maliciously untaken, and were further un[der]taken for the specific purpose of prejudicing the accused and denying him a fair and impartial trial.

(Emphasis added.)

The military judge denied this motion after conducting a limited hearing on this matter. He stated:

MJ: I'm ready to enter findings on the motion. The essential findings of fact, first, the original trial counsel in this case, Lieutenant Darlene Simmons, and the originally detailed military defense counsel, Lieutenant Kevin McConnell, did not engage in any collusion or any other improper conduct at any time regarding this case, vis a vis their relationships with each other. Each properly represented the interests of his or her client at all times, all times referenced by the defense in the previous proceedings of record. Any statements made by Lieutenant Simmons which required witnesses in this case to notify Naval Legal Service Detachment, Kings Bay, Georgia, personnel as to their whereabouts were designed to ensure orderly control of a large number of such witnesses in this building, or, to explain the rules of sequestration regarding court-martial testimony. As such, those statements were entirely proper. Next, the defense has not, as a result of those statements, or for any other reason, had its access to witnesses restricted in any way, or been prejudiced in any way. Next, Lieutenant Simmons' order to Mrs. Lynel Meek to leave defense counsel's office was improper but resulted in absolutely no prejudice to the accused.

MJ: *Next, Lieutenant Simmons' comments regarding Mr. Crudup's pretrial performance were not intended to influence the accused's decision as to employment of counsel and had no such effect.* Next, Lieutenant Simmons' comment made in the hearing of several witnesses that the accused was, "trying to worm out of his trial," was improper but was made in frustration and was not intended to influence witnesses to the detriment of the accused and had no such effect. That statement did not influence any witness in any way and therefore resulted in no prejudice to the accused. Lieutenant Simmons' comments to witness Carr that he could still face a court-martial for his involvement as an aider and abettor in this case were made in the context of discussing the necessity for a grant of immunity for Carr, were not improper, were not intended to

influence his testimony in any way, and did not, in fact, influence his testimony in any way. Therefore, those comments resulted in no prejudice to the accused. *Lieutenant Simmons' comments to witness Boyer regarding his possible criminal liability in this case were improper and should not have been made; however, those comments resulted in no prejudice to the accused. Because there has been no deliberate attempt by the Government to deprive the defense of access to witnesses, or of any evidence favorable to the defense, and because there has been absolutely no prejudice to the accused whatsoever in this case, the motion to dismiss is denied....*

(Emphasis added.)

The Court of Military Review relied on this ruling by the military judge to affirm this case. It stated:

Ultimately, both the TC and the DC were replaced by other counsel before pleas were entered, the latter at the request of the appellant and the former because she had been transferred to another command. Record at 219. The CDC and newly detailed defense counsel moved to dismiss the charges as a result of prosecutorial misconduct arising primarily from the factual scenario set forth above. The military judge took extensive testimony on the issue, entered findings, and ultimately denied the motion. In particular, after stating that "I want to know if these witnesses feel they are intimidated in dealing with the defense and, if they are, I'm going to set it straight right now," (Record at 83) the judge brought *all* but one of the witnesses, who could even remotely have been touched by the pretrial conduct of the TC, to the stand. He thoroughly established that the witnesses understood that they were to speak freely and truthfully to the appellant and his counsel without fear of repercussion. The military judge found that "because there has been *absolutely* no prejudice to the accused whatsoever in this case, the motion [to dismiss for prosecutorial misconduct] is denied." Record at 231.

* * *

We now must address the issue of prejudice. We note that the appellant pleaded guilty pursuant to a pretrial agreement and called no witnesses during the presentencing portion of his court-martial. In view of the military judge's thorough "cleansing" of the potential witnesses of any possible ill effect of the TC's comments to them, the witnesses' assurances on the record that they would testify truthfully if called, the fact that the TC was ultimately replaced, and finally, the fact that the appellant chose not to call any of the witnesses to testify on his behalf, we find that he was not denied a fair trial or caused to suffer any other form of prejudice by the improprieties of the TC. Accordingly, this assignment of error has no merit.

40 MJ at 676, 678 (footnotes omitted).

———

■ Prosecutorial misconduct can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, *e.g.,* a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon. *See Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935) (duty of a prosecutor "to refrain from improper methods calculated to produce a wrongful conviction"); *see generally* S. Childress and M. Davis, 2 *Federal Standards of Review* § 12.01 (2d ed. 1992). The characterization of certain action as "prosecutorial misconduct," however, does not in itself mandate dismissal of charges against an accused or ordering a rehearing in every case where it has occurred. *See Greer v. Miller,* 483 U.S. 756, 765, 107 S.Ct. 3102, 3108–09, 97 L.Ed.2d 618 (1987); *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). Instead, an appellate court usually considers the legal norm violated by the prosecutor and determines if its violation actually impacted on a substantial right of an accused (*i.e.,* resulted

in prejudice). *See generally United States v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); *United States v. Morrison,* 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981); *United States v. Rushatz, supra.* If it did,[2] then the reviewing court still considers the trial record as a whole to determine whether such a right's violation was harmless under all the facts of a particular case. *See generally United States v. Morrison,* 449 U.S. at 365, 101 S.Ct. at 668; *see also Davis v. Zant,* 36 F.3d 1538, 1546 (11th Cir.1994).

A

*Trial Counsel's Interference with Defense Witness*

■ Appellant initially contends that trial counsel's pretrial attempt to intimidate a defense witness named Boyer was "prosecutorial misconduct." He then argues that this misconduct also constituted unlawful command influence in violation of Article 37(a), UCMJ, 10 USC § 837(a). He further argues that such a statutory violation constituted a "structural defect" in his court-martial requiring automatic reversal, not a "trial error" requiring a showing of prejudice. *See generally Arizona v. Fulminante,* 499 U.S. 279, 307–10, 111 S.Ct. 1246, 1263–65, 113 L.Ed.2d 302 (1991). He finally submits that the Court of Military Review's reliance on *United States v. Thomas,* 22 MJ 388 (1986), *cert. denied,* 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987), for a rule requiring actual prejudice in unlawful-command-influence cases was erroneous.

Several legal norms are violated when a trial counsel attempts to or unlawfully dissuades a defense witness from testifying at a court-martial. *See* Art. 38(a), UCMJ, 10 USC § 838(a) (trial counsel of a general or special court-martial "shall prosecute in the name of the United States . . . ."); *see generally Berger v. United States, supra.* Prosecutorial misconduct of this type can frustrate

---

2. To the extent that a prejudice analysis may include consideration of matters considered in a harmless-error review, the latter inquiry may be unnecessary. *See Kyles v. Whitley,* —— U.S. ——,

——–——, 115 S.Ct. 1555, 1566–67, 131 L.Ed.2d 490 (1995), *citing Hill v. Lockhart,* 28 F.3d 832, 839 (8th Cir.1994).

an accused's right to compulsory process under the Sixth Amendment even if done under the guise of advising the defense witness of his constitutional rights. *See* Art. 46, UCMJ, 10 USC § 846; *United States v. Morrison,* 535 F.2d 223, 226–27 (3d Cir.1976); *United States v. Smith,* 478 F.2d 976, 979 (D.C.Cir. 1973); *see also United States v. Henao,* 652 F.2d 591, 592–93 (5th Cir.1981). We also note that such conduct towards a defense witness, if done with the requisite intent, can be both a military and civilian criminal offense. *See* Art. 134, UCMJ, 10 USC § 934, and para. 96, Part IV, Manual for Courts–Martial, United States, 1984 (Obstructing Justice); 18 USC § 1512; *cf.* Art. 37(a) (unlawful to influence the action of a court-martial or any other military tribunal or any member thereof). Finally, such conduct by a trial counsel clearly constitutes a gross ethical violation. *See* Rule 3.4, Rules of Professional Conduct, [Navy] Judge Advocate General Instruction (JAGINST) 5803.1 (26 Oct 1987);[3] *see generally* Standard 3–3.2(b), ABA Standards for Criminal Justice: Prosecution Function and Defense Function (3d ed. 1993).[4]

■ Of course, it is not the number of legal norms violated but the impact of those violations on the trial which determines the appropriate remedy for prosecutorial misconduct. In the constitutional context, a majority of the Supreme Court has generally held that a *per se* reversal rule is reserved only for "structural defects in the constitution of the trial mechanism" which render *any trial* unreliable and unfair. *See Arizona v. Fulminante,* 499 U.S. at 310–11, 111 S.Ct. at 1265–66. Moreover, the Supreme Court in *United States v. Hasting* and *United States v. Morrison,* both *supra,* has strongly suggested that prosecutorial misconduct is not

*per se* reversible error but rather is error whose impact may vary in individual cases. In addition, the Supreme Court in a Fifth Amendment context has specifically held that a harmless-error rule is appropriate even where a prosecutor knowingly used perjured testimony. *See United States v. Bagley,* 473 U.S. 667, 679 and n. 9, 105 S.Ct. 3375, 3382 and n. 9, 87 L.Ed.2d 481 (1985). Finally, in the particular context of Article 37, this Court has applied a harmless-error rule where a defense witness was unlawfully influenced by a commander and his staff on the basis of their quasi-prosecutorial status. *See United States v. Thomas,* 22 MJ at 393. Accordingly, we reject appellant's argument for a *per se* reversal rule in this case and hold that the prosecutorial misconduct towards the defense witness Boyer must be evaluated for prejudice to the accused's right to compel witnesses for his court-martial. *See United States v. Pepe,* 747 F.2d 632, 655–56 (11th Cir.1984).

■ Turning to the record of trial, we first note that Mr. Boyer was called as a witness by the defense and did actually testify at this court-martial. He testified that a boat motor which appellant was accused of stealing was not "operable" and was generally thought to be scrap. He also testified that it was "common practice" for personnel at Kings Bay to take the inventory items which appellant was accused of stealing. In addition, he testified that the Command Duty Officer routinely allowed enlisted personnel to take government vehicles for personal use. Moreover, he testified as to Lieutenant Simmons' threatening conduct toward him and the fact that he was scared by it. Finally, he stated that he told the truth at this court-martial regardless of her actions. Second, we note that appellant chose to conditionally plead

---

3. Rule 3.4 states:

   A judge advocate shall not: a. unlawfully obstruct another party's access to evidence or unlawfully alter, destroy, or conceal a document or other material having potential evidentiary value. A judge advocate shall not counsel or assist another person to do any such act[.]

4. Standard 3–3.2(b) provides:

   (b) A prosecutor should advise a witness who is to be interviewed of his or her rights against self-incrimination and the right to counsel whenever the law so requires. It is also proper for a prosecutor to so advise a witness whenever the prosecutor knows or has reason to believe that the witness may be the subject of a criminal prosecution. *However, a prosecutor should not so advise a witness for the purpose of influencing the witness in favor or against testifying.*
   (Emphasis added.)

guilty after the military judge considered Boyer's testimony, denied his prosecutorial misconduct motion, and permitted it to be preserved for appeal. *See* RCM 910(a)(2), Manual, *supra.* We find no prejudice in these circumstances.

## B

### *Prosecutor's Invasion of Appellant's Right to Counsel*

■ Appellant also contends that trial counsel unjustifiably, albeit temporarily, invaded or interfered with his constitutionally protected relationship with his civilian counsel, Mr. Crudup, under the Sixth Amendment. He asserts that trial counsel did not have "any legitimate state motivation" for such conduct and that it "chilled" his relationship with his defense attorney in terms of the trust and confidence which he thereafter placed in him. Final Brief at 15, 17. Appel-

lant urges this Court to adopt a *per se* reversal rule or a less demanding test for prejudice in this situation than used in those cases where a legitimate government reason exists for an invasion of the right to counsel. *Id.* at 15–17. *See* W. LaFave and J. Israel, 2 *Criminal Procedures* (hereafter LaFave and Israel) § 11.8(c) at 76 (1984). He then asks this Court to disregard the finding of the court below of no prejudice and order a rehearing in his case as a remedy *per se* tailored for this invasion of his Sixth Amendment rights. Final Brief at 17.

As a starting point, we note that it was detailed military defense counsel who first denigrated civilian defense counsel's effectiveness before his client.[5] Trial counsel, however, openly joined in this denouncement of Mr. Crudup's legal service in appellant's presence.[6] She told appellant, "[Y]our law-

---

5. JAGINST 5803.1 (26 Oct 1987) states in Section 4, dealing with *Policy:*

    c. Employment of civilian counsel by an individual client alters no responsibilities of a judge advocate to that client.

    (1) When civilian counsel is retained by an individual client, the naval judge advocate assigned shall inform civilian counsel of this instruction and the Rules. Civilian counsel shall further be informed that the Rules are equally applicable to civilian counsel practicing before military proceedings or tribunals, as a condition of such practice. Such counsel will additionally be informed that the rules take precedence over rules which might otherwise apply.

    (2) If the individual client designates civilian counsel as chief counsel, the judge advocate must defer to civilian counsel in any conflict over trial tactics.

    (3) If counsel occupy a "co-counsel" status, conflict in proposed trial tactics necessitates consultation with the client for resolution.

    (4) If civilian counsel has, in the opinion of the judge advocate representing an individual client, acted contrary to the Rules, the matter should first be discussed with civilian counsel. If not resolved between counsel, the client must be informed of the matter by the judge advocate.

    (a) If, after being apprised of possible misconduct, the client approves of the questioned conduct, the judge advocate. shall attempt to withdraw from the case in accordance with Rule 1.16. The client shall be informed of such intent to withdraw prior to action by the judge advocate.

6. Para. 10, JAGINST. 5803.1, dealing with *Processing Complaints*, states in pertinent part:

    ———

    b. *Civilian Counsel.* Allegations concerning civilian counsel shall be forwarded to the staff or senior judge advocate for the officer exercising general court-martial convening authority over the situs where the complaint arose.

    (1) All substantial complaints involving civilian counsel shall be forwarded to the Judge Advocate General for review prior to action with regard to bar authorities, and in all cases in which suspension or disbarment from practice under the cognizance of the Judge Advocate General is contemplated.

    (2) The Judge Advocate General may request review of the facts and circumstances by the Ethics Committee, or may act directly on the materials compiled by the reporting authority.

    (3) When suspension or decertification from practice under areas of cognizance of the Judge Advocate General is contemplated, the matter, including all evidence to be considered, shall be referred to the civilian counsel for comment before such action.

    (a) Comment by the civilian counsel may be provided in writing. No personal hearing right exists or is contemplated by this instruction.

    (b) A reasonable time to respond, not normally exceeding 30 days shall be provided, upon request, to the civilian counsel. Any request for time to respond must be *received* by the Assistant Judge Advocate General (Civil Law), Office of the Judge Advocate General, Department of the Navy, 200 Stovall Street, Alexandria, Virginia 22332–2400,

yer hasn't interviewed witnesses. He's ineffective as your lawyer." Nevertheless, both the military judge and the appellate court below found that "TC's comments regarding civilian counsel's inadequate preparation were not intended to influence the appellant's decision as to employment of counsel *and had no such effect.*" 40 MJ at 677 (emphasis added).

We are unsure on what basis either court below found that trial counsel's comments were not intended to influence appellant's civilian counsel decision. Lieutenant Simmons did not testify at this trial on this question, and the logical tenor of her comments and those of assigned military defense counsel suggest the opposite conclusion. In any event, for the reasons stated below, we are persuaded that her "inappropriate"[7] comments did not prejudice appellant in any way with respect to his representation by this civilian counsel. *See generally Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) (prejudice required to establish violation of an accused's Sixth Amendment right to effective assistance of counsel).

We initially note that Mr. Crudup continued to be civilian counsel in appellant's case despite trial counsel's comments. Moreover, once this incident came to light, the military judge particularly advised appellant that Lieutenant Simmons was "prohibited from advising you as to who you should and shouldn't have as a civilian attorney" and "you should not take her advice in that issue." Appellant was also asked by the military judge if he "reject[ed] her advice on that issue" and he answered in the affirmative. Finally, before appellant's pleas were accepted, he openly declared that he was "satisfied" with his representation by his civilian attorney, Mr. Crudup. In these circumstances, we find no prejudice inured to appellant as a result of trial counsel's remarks and that

appellant's right to effective assistance of counsel was not violated. *See United States v. Morrison,* 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981).

As for appellant's proposed *per se* reversal rule or his lesser-standard-of-prejudice rule, we are not persuaded to adopt either one. His arguments are based on speculation in a legal textbook which concedes that, even for "illegitimate" government invasions of the attorney-client relationship, a prejudice analysis is later needed to determine an appropriate remedy. LaFave & Israel, *supra* at 76. Moreover, no case law from this Court has been cited to us which recognizes either rule or such a distinction with respect to violations of a soldier's right to counsel. More importantly, both rules would be at odds with the Supreme Court decisions in *United States v. Hasting, supra* (Fifth Amendment violation by prosecutor requires harmless-error analysis), and in *United States v. Morrison,* 449 U.S. at 365, 101 S.Ct. at 668 ("The premise of our prior cases is that the constitutional infringement identified has had or threatens some adverse effect upon the effectiveness of counsel's representation or has produced some other prejudice to the defense."). In any event, such a constitutional rule had not been announced by the Supreme Court at the time of appellant's trial or appeal; accordingly, our conferring such a benefit upon him would be at best premature. *See Powell v. Nevada,* 511 U.S. 79, ——, 114 S.Ct. 1280, 1283, 128 L.Ed.2d 1 (1994); *see generally Moore v. Illinois,* 434 U.S. 220, 232, 98 S.Ct. 458, 466, 54 L.Ed.2d 424 (1977) (harmless-error rule applied to unjustified violation of right to counsel).

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Chief Judge COX and Judges CRAWFORD and GIERKE, and Senior Judge DARDEN concur.

---

within five days of notification of the intended action.

**7.** The Court of Military Review found trial counsel's comment to be inappropriate. Indeed, Rule 4.2, Rules of Professional Conduct, JAGINST 5803.1, states:

In representing a client, a judge advocate shall not communicate about the subject of representation with a party the judge advocate knows to be represented by another lawyer or judge advocate in the matter, unless the judge advocate has the consent of the other judge advocate or is authorized by law to do so.