# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39446**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Jason L. CUMMINGS**
Master Sergeant (E-7), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 3 October 2019

———————————

*Military Judge:* L. Martin Powell.

*Approved sentence:* Bad-conduct discharge, confinement for 4 months, and reduction to E-4. Sentence adjudged 9 January 2018 by GCM convened at Francis E. Warren Air Force Base, Wyoming.

*For Appellant:* Major Todd M. Swensen, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, POSCH, and KEY, *Appellate Military Judges.*

Judge POSCH delivered the opinion of the court, in which Senior Judge J. JOHNSON and Judge KEY joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

POSCH, Judge:

In accordance with Appellant's unconditional guilty plea pursuant to a pretrial agreement (PTA), a general court-martial composed of a military judge found Appellant guilty of one charge and specification of assault consummated by a battery upon his adopted daughter, SC, a child under the age of 16 years,

in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928.[1] As agreed to by the convening authority in the PTA, Appellant pleaded not guilty to a charge and two specifications alleging sexual assault and abusive sexual conduct of SC, in violation of Article 120b, UCMJ, 10 U.S.C. § 920b, which were withdrawn and dismissed by the convening authority without prejudice after announcement of sentence.[2]

After the military judge accepted Appellant's plea, Appellant was sentenced to a bad-conduct discharge, confinement for four months, and reduction to the grade of E-4. Before taking action, the convening authority deferred the reduction in grade and mandatory forfeitures of Appellant's pay and allowances until action. At action, the convening authority approved the adjudged sentence, which did not exceed the limitations in the PTA. The convening authority also waived the mandatory forfeitures for a period of four months, or release from confinement, or expiration of term of service, whichever was sooner, for the benefit of Appellant's dependent spouse and children.

On appeal, Appellant claims the only reason he entered into a PTA with the convening authority and pleaded guilty was because he felt the combined pressure from the Government and his defense counsel to end the case, and the only way he could do that was to plead guilty. To this end, Appellant assigns three errors: (1) whether Appellant's plea of guilty is improvident because the Government's improper conduct during the investigation violated Appellant's right to due process, thereby pressuring him into pleading guilty when there was no evidence to corroborate Appellant's confession; (2) whether Appellant's trial defense counsel were ineffective, and his plea of guilty involuntary, because Appellant was pressured by his counsel to plead guilty;[3] and (3) whether the sentence to a bad-conduct discharge is inappropriately severe. We find no error and affirm.

## I. BACKGROUND

Appellant's conviction, and the matters he raises on appeal, stem from an allegation made by his adopted 14-year-old daughter, SC, who claimed that Appellant put his hand down the back of her shorts and squeezed her bottom

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ), Rules for Courts-Martial, and Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] The convening authority further agreed to dismiss the charge and specifications alleging a violation of Article 120b, UCMJ, *with* prejudice "upon completion of appellate review in which the findings and sentence have been upheld."

[3] Appellant personally asserts this issue. *See United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

and touched her vagina while they were together one evening in their off-base home in Cheyenne, Wyoming.

The day after the charged incident, SC recounted Appellant's conduct to her mother and a friend, each of whom independently took action that caused SC's allegation to be reported to military and civilian law enforcement personnel. The same day these personnel received the reports, SC repeated her account to a sexual assault nurse examiner (SANE). SC relayed to the SANE that Appellant told her he "had to tell" SC "a dark secret." Appellant then put his hands down her pants and told SC sometimes he wished he had SC all to himself. After Appellant removed his hands, SC related that Appellant put his hands back into her pants and told SC he wished he could see her naked, and Appellant stuck his fingertips into her vagina.

The same day law enforcement personnel received the reports, SC and Appellant were separately interviewed by agents of the Air Force Office of Special Investigations (AFOSI). The AFOSI agents confronted Appellant with SC's allegations, which Appellant initially and repeatedly denied. Later during the interview, Appellant admitted he touched SC's bottom and vagina, and signed a sworn statement to that effect. Appellant was recorded telling the AFOSI agents, "I remember sliding my hand down her butt and my finger touched her vagina. That is the honest to God truth, I don't have anything else to hide." Appellant subsequently wrote in his own hand, *inter alia*, "At some point I placed my hands on her butt" and "[a]t some point I placed my hands on her butt again but this time I reached further down and put my right index finger on her vagina and pushed down a little. I remember my finger feeling the outer lips and I pulled back and she jumped."

Appellant's commander promptly ordered Appellant to have no contact with SC and limited supervised contact with another of his children, which order would remain in effect until Appellant's guilty plea some 14-and-a-half months later. A little over six months after AFOSI initiated an investigation into Appellant's conduct with SC, Appellant's commander preferred a single charge and two specifications against Appellant. Appellant was accused of sexual assault by penetrating SC's vulva with his fingers and abusive sexual contact by intentionally touching SC's buttocks with his hand, both with the intent to arouse Appellant's sexual desire in violation of Article 120b, UCMJ. A preliminary hearing conducted in accordance with Article 32, UCMJ, 10 U.S.C. § 832, was held 47 days after preferral. Three weeks after the hearing, a military judge who was designated as the preliminary hearing officer (PHO) issued his report finding probable cause to conclude that Appellant committed the charged offenses, but nonetheless recommended the charge and its specifications be withdrawn.

The PHO's recommendation was based, in part, on SC's submission of a memorandum through Appellant's trial defense counsel, in which she declared her "desire and intention to not appear as a witness in any trial for this case." It was also based on SC's verbal and written declarations that she made up the allegation to manipulate her mother into breaking up with Appellant so that SC could maintain a relationship with a boyfriend. SC claimed in the memorandum that Appellant was drunk on the night in question and that, after falling asleep on the couch, Appellant's hand fell onto her buttocks. At that moment, SC decided to place Appellant's hand inside her pants. Appellant then woke up, noticed his hand down SC's pants, she claimed, and that explains why Appellant believed he had touched her inappropriately. The general court-martial convening authority did not follow the PHO's recommendation as to disposition. Instead, the convening authority followed the advice of his staff judge advocate who concluded the charge and its specifications were warranted by the evidence and ordered the offenses be referred to trial by general court-martial.

At an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session held by the military judge[4] at least 11 weeks before trial on the merits, Appellant moved to suppress his statements made to the AFOSI agents on grounds that the Government could not corroborate his admissions without SC's testimony. The Government moved to admit SC's initial pretrial statements to the AFOSI agents under the residual exception to the rule against hearsay.[5] The military judge heard testimony, considered evidence on the motions, and recessed court until trial reconvened approximately two-and-a half months later.

On the Friday morning before trial was scheduled to reconvene, the military judge informed counsel for both parties by email of his expected ruling on the Defense's motion to suppress and the Government's motion to admit SC's pretrial statements under the residual hearsay exception. The military judge indicated he "was expecting to deny the defense motion to suppress" and "expect[ed] to grant, in part at least, the [G]overnment's motion to admit residual hearsay," but withheld ruling until such time as he received evidence that SC would testify contrary to her initial allegations.

During the next four days, Appellant and the convening authority came to an agreement on the terms of a PTA. Two key concessions made by the convening authority were to reduce the jeopardy Appellant faced from a charge and

---

[4] The military judge who presided at Appellant's court-martial was not the same judge designated by the convening authority as the PHO.

[5] Mil. R. Evid. 807, *Residual Exception*.

two specifications of sexual assault and abusive sexual contact to a single charge and specification of assault consummated by a battery,[6] and to place a limitation on Appellant's sentence. Appellant agreed to plead guilty with the guarantee that if a punitive discharge were adjudged, it would be no more severe than a bad-conduct discharge. Additionally, in exchange for Appellant's plea, the convening authority agreed to disapprove any portion of the sentence that included confinement in excess of 225 days.

Pursuant to the PTA, on the day before trial reconvened, Appellant's commander preferred an additional charge and specification alleging assault consummated by a battery upon SC, a child under the age of 16 years, in violation of Article 128, UCMJ. On the day of trial, the additional charge was referred to be tried with the initial charge and specifications. Appellant was promptly served with the referred additional charge, and waived both the right to a preliminary hearing and the five-day statutory waiting period.

In accordance with the PTA, Appellant pleaded guilty, unconditionally, to the additional charge and specification, and not guilty to the initial charge and its specifications. At trial, the military judge inquired into the voluntariness of Appellant's plea, accepted his plea, and found Appellant guilty of the additional charge and its specification. Also in accordance with the PTA, the charge and two specifications alleging sexual assault and abusive sexual conduct of SC were withdrawn and dismissed by the convening authority without prejudice. Appellant raised none of the assigned errors during clemency or otherwise during post-trial processing of his case.

## II. DISCUSSION

### A. Voluntary and Provident Plea of Guilty

On appeal, Appellant claims his plea of guilty was involuntary, and therefore improvident, owing to improper pretrial conduct by the Government including prosecutorial misconduct. We are not persuaded.

#### 1. Additional Background

As part of his obligation under the PTA, Appellant agreed to "waive all waivable motions," to include his "request for relief based upon Article 13,

---

[6] Both the initial and additional charge alleged the element in aggravation that Appellant's conduct involved a child under the age of 16 years.

UCMJ."[7] On the record, Appellant affirmatively waived relief from illegal pre-trial punishment and waived his motion to suppress his admissions to the AFOSI agents based on lack of corroboration. Appellant further agreed on the record to waive a motion pursuant to Mil. R. Evid. 412 to admit evidence of SC's sexual behavior,[8] and a motion to merge the Article 120b, UCMJ, offenses for unreasonable multiplication of charges. Appellant averred he had the benefit of the advice of counsel in waiving the motions and that he was not forced to enter into that term of the PTA.

Appellant also agreed as part of the PTA to enter into a "reasonable stipulation of fact that supports the offense to which [Appellant was] pleading guilty." Accordingly, on the same day as Appellant's plea, he stipulated with the Government that on the evening in question he was watching television in the home he shared with SC, her mother, and other members of their family. SC had gotten into an argument with her mother about her relationship with her boyfriend and came to speak with Appellant. SC lay across Appellant's lap and gave him a hug. Appellant became upset about what SC told him about her relationship with her boyfriend. He stated words to the effect that SC would "have to stop doing that stuff," she was "a little girl trapped in a woman's body" and "playing with fire," and he would protect SC like a father should. Appellant stipulated that when he returned after getting up to use the restroom, SC got back on his lap and had lain on his chest. Appellant put his hand down SC's pants and under her underwear and touched her buttocks with his hand. Appellant then said he "can't be this guy" and removed his hand. After he pulled his hand out he said, "I can't do this, it isn't me."

Appellant further stipulated he felt a "huge feeling of guilt and sorrow immediately," and then looked at SC and told her "don't do what you did with the boy ever again." Before Appellant went to bed, he went to SC's bedroom "and told her not to tell her mom." Finally, Appellant stipulated, he "didn't say what he wanted to say: that he had really messed up and just did the most regrettable[,] terrible thing he had ever done, and wanted SC to forgive him."

On appeal, Appellant submitted a declaration detailing the harassment he alleges his family suffered during the Government's investigation. Appellant

---

[7] Appellant's motion for relief under Article 13, UCMJ, 10 U.S.C. § 813, claimed he was illegally punished by his commander's no-contact order. Appellant requested three days credit against any sentence to confinement for each day he was subject to the order. The motion was served on the military judge and opposing counsel, but was not marked as an appellate exhibit or included in the record of trial.

[8] Like Appellant's Article 13, UCMJ, motion, the Mil. R. Evid. 412 motion was served on the military judge and opposing counsel, but was not marked as an appellate exhibit or included in the record of trial.

avers AFOSI agents came to the family home the night before a prosecuting attorney personally served a subpoena to compel his wife to appear with SC at his court-martial. Appellant alleges the agents shone lights in windows, violently beat on doors and windows, and opened the door, but the family dog deterred the agents from entering completely and they retreated. Appellant also claims that when the prosecuting attorney served the subpoena, he told Appellant's wife that SC would be required to appear in court whether she wanted to or not because the decision whether or not to testify was not SC's to make. Appellant relays this incident "was never discussed during court." Appellant also alleges in his declaration that his unit was neither supportive nor responsive, and in some cases was seemingly indifferent, to his needs and the needs of his family.

### 2. Analysis

Appellant asks this court to find his plea of guilty improvident and set aside the findings and sentence, thereby putting Appellant's case back in the posture it was in before he decided to plead guilty. We find Appellant's plea waived claims of improper conduct by the Government during the investigation of Appellant's case, and his claim of prosecutorial misconduct, which we address separately, is not supported by the record. We further find Appellant's plea was voluntary and provident.

### a. Allegations of Improper Government Conduct during the Investigation of Appellant's Case

Appellant claims the Government acted improperly because his "false confession was made under emotional manipulation and suggestive interrogation tactics." Appellant also claims misconduct in that his will was overborne because 445 days had passed from the time of the alleged offense to his plea, during which time he was subject to a no-contact order that forbade unsupervised time with his family, and because he would have to register as a sex offender if convicted of the initial charge and either of its specifications. Appellant also avers that SC's special victims' counsel told SC that she should not recant because "she could get in trouble," and implies that the Government's investigation should have ceased once SC recanted. Appellant generally avers misconduct in that the Government "continually harassed his family."

An unconditional guilty plea generally waives any objection related to the factual question of guilt. Rule for Courts-Martial (R.C.M.) 910(j); *see also United States v. Mooney*, 77 M.J. 252, 254 (C.A.A.F. 2018). "Objections that do not relate to factual issues of guilt are not covered by this bright-line rule, but the general principle still applies: An unconditional guilty plea generally 'waives all defects which are neither jurisdictional nor a deprivation of due process of law.'" *United States v. Schweitzer*, 68 M.J. 133, 136 (C.A.A.F. 2009)

(quoting *United States v. Rehorn*, 26 C.M.R. 267, 268–69 (C.M.A. 1958)). The United States Court of Appeals for the Armed Forces (CAAF) has observed "[w]hile the waiver doctrine is not without limits, those limits are narrow and relate to situations in which, on its face, the prosecution may not constitutionally be maintained." *United States v. Bradley*, 68 M.J. 279, 282 (C.A.A.F. 2010) (citations omitted).

Consequently, an appellant who has entered an unconditional guilty plea ordinarily may not raise on appeal an error that was waived at trial. *United States v. Chin,* 75 M.J. 220, 222 (C.A.A.F. 2016) *(*citing *United States v. Campos,* 67 M.J. 330, 332–33 (C.A.A.F. 2009); *United States v. Gladue,* 67 M.J. 311, 313 (C.A.A.F. 2009)). However, this "ordinary" rule does not apply to statutory review by a military court of criminal appeals (CCA) under Article 66(c), UCMJ, 10 U.S.C. § 866(c). *Id.* "Article 66(c) empowers CCAs to consider claims . . . even when those claims have been waived." *Id.* (quoting *United States v. Chin,* 2015 CCA LEXIS 241, at *9–11 (A.F. Ct. Crim. App. 12 Jun. 2015) (unpub. op.), *aff'd,* 75 M.J. 220 (C.A.A.F. 2016)). This is because CCAs maintain an "affirmative obligation to ensure that the findings and sentence in each such case are 'correct in law and fact . . . and should be approved.'" *Id.* at 223 (quoting *United States v. Miller*, 62 M.J. 471, 472 (C.A.A.F. 2006) (alteration in original)).

"If an appellant elects to proceed with Article 66, UCMJ, review . . . . the CCAs are required to assess the entire record to determine whether to leave an accused's waiver intact, or to correct the error." *Id.* (citation omitted). This requirement does not mean an unconditional guilty plea is without meaning or effect. *Id.* "Waiver at the trial level continues to preclude *an appellant* from raising the issue on appeal," *Id.* (citing *Gladue*, 67 M.J. at 313–14), and an "unconditional guilty plea continues to serve as a factor for a CCA to weigh in determining whether to nonetheless disapprove a finding or sentence." *Id.*

Before entering his unconditional plea, Appellant moved for relief claiming his commander's no-contact order constituted illegal pretrial punishment under Article 13, UCMJ. However, an unlawful pretrial punishment motion is one of those matters that may be waived in a PTA, *United States v. McFadyen*, 51 M.J. 289, 291 (C.A.A.F. 1999), and Appellant acknowledged that by his plea of guilty he gave up the right to relief he may have received.[9] Appellant also acknowledged on the record that he was not forced to agree to that term of the PTA. In a related claim, Appellant asserts for the first time on appeal that his

---

[9] Appellant did so with the understanding that he could ask the military judge to consider the effect of his commander's no-contact order to decide an appropriate sentence.

will was overborne because he was subject to the no-contact order from the time of the alleged offense to his plea, or 445 days. Although Appellant was not in any way inhibited from seeking relief at trial for violation of his right to a speedy trial,[10] he has not identified specific factors that would enable him to prevail, and waived our review of speedy trial concerns by his plea. *See United States v. Tippit*, 65 M.J. 69, 75–76 (C.A.A.F. 2007). By offering an unconditional plea, Appellant also waived his motion to suppress his admissions to the AFOSI agents that he claims lacked corroboration and was obtained by the Government's use of suggestive interrogation techniques. *See, generally*, *United States v. Hinojosa*, 33 M.J. 353, 354 (C.M.A. 1991) (citations omitted) (unconditional guilty pleas foreclose appellate relief from an unsuccessful motion to suppress an allegedly coerced confession). Appellant also affirmatively waived this motion on the record.

We have considered Appellant's complaints of improper Government conduct along with Appellant's claims of undue influence by SC's special victims' counsel, and general averments of harassment. We conclude these claims are neither jurisdictional nor did they deny Appellant the due process of law, and thus are waived insofar as our consideration of the factual question of his guilt on appeal. R.C.M. 910(j); *Schweitzer*, 68 M.J. at 136. We have determined to leave Appellant's waiver intact. *Chin,* 75 M.J. at 222.

### b. Allegations of Prosecutorial Misconduct

Included among Appellant's claims of improper Government conduct are claims of prosecutorial misconduct. Appellant's brief in support of the assigned error claims it was improper for the convening authority to refer the initial charge alleging sexual assault and abusive sexual contact after SC recanted her allegations and the PHO recommended the convening authority dismiss the charge and specifications.[11] Appellant similarly claims it was improper for the trial counsel to subpoena SC's mother to appear at trial with SC against her daughter's wishes. Appellant generally avers impropriety in that "the Government pressed forward on the sexual assault allegations even without evidence to support the charge."

"Prosecutorial misconduct is 'action or inaction by a prosecutor in violation of some legal norm or standard, e.g., a constitutional provision, a statute, a

---

[10] Several authorities give rise to an appellant's right to a speedy trial. This right has been recognized under the Fifth and Sixth Amendments, U.S. CONST. amend. V, VI; Articles 10 and 33, UCMJ, 10 U.S.C. §§ 810, 833; R.C.M. 707; and case law. *United States v. Vogan*, 35 M.J. 32, 33 (C.M.A. 1992).

[11] Appellant avers, "this whole situation should have been dropped as the Article 32[, UCMJ,] hearing judge originally suggested."

Manual rule, or an applicable professional ethics canon.'" *United States v. Pabelona*, 76 M.J. 9, 11–12 (C.A.A.F. 2017) (quoting *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996)). It is described as "behavior by the prosecuting attorney that 'overstep[s] the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense.'" *Id.* (alteration in original) (quoting *Berger v. United States*, 295 U.S. 78, 84 (1935)). We have recognized the convening authority's prosecutorial role in referring charges. *United States v. Arindain*, 65 M.J. 726, 728–31 (A.F. Ct. Crim. App. 2007), *aff'd*, 66 M.J. 192 (C.A.A.F. 2008) (mem.); *cf. United States v. Wiesen*, 57 M.J. 48, 50 (C.A.A.F. 2002) (member selection is an exercise of prosecutorial discretion). If prosecutorial misconduct occurred, then we must determine whether "the legal norm violated . . . actually impacted on a substantial right of an accused (i.e., resulted in prejudice)." *United States v. Golston*, 53 M.J. 61, 64 (2000) (quoting *Meek*, 44 M.J. at 5).

Appellant asserted the allegations here for the first time after his trial, thus we employ the fact-finding authority granted to this court under Article 66, UCMJ, 10 U.S.C. § 866, in reviewing information necessary to decide the question.[12] We also assume *arguendo* that Appellant's claim of pretrial prosecutorial misconduct is not waived by Appellant's unconditional plea of guilty. *See, e.g.*, *United States v. Atchak*, ACM 38526, 2015 CCA LEXIS 328, at *24–27 (A.F. Ct. Crim. App. 10 August 2015) (unpub. op.) (declining to find an appellant's plea of guilty waived the "prosecutorial misconduct aspect" of an unlawful command influence motion involving a trial counsel's pre-trial conduct), *aff'd on other grounds*, 75 M.J. 193 (C.A.A.F. 2016).

Here, the convening authority referred the initial charge and specifications on the recommendation of his staff judge advocate that there were "reasonable grounds to believe that an offense triable by a court-martial ha[d] been committed and the accused committed it." R.C.M. 601(d)(1). We find the convening authority acted in conformity with this standard when he made his referral decision independent of the PHO's recommendation to withdraw the initial charge. *See also* R.C.M. 405(a), Discussion ("Determinations and recommendations of the preliminary hearing officer are advisory."). While Appellant seems to imply that a convening authority cannot refer a charge after an alleged victim recants an allegation of sexual assault, Appellant cites no authority for

---

[12] In deciding questions of prosecutorial misconduct, we normally review the military judge's findings of fact under the clear error standard. *United States v. Argo*, 46 M.J. 454, 457 (C.A.A.F. 1997). We decide de novo whether those facts constitute prosecutorial misconduct rising to the level of prejudicial error as a matter of law. *Id.* (citing *Meek*, 44 M.J. at 5–6; *United States v. Sullivan*, 42 M.J. 360, 363 (1995)).

such a result and we find none. We therefore conclude that the convening authority did not engage in misconduct in exercising discretion to refer the initial charge and specifications to trial by general court-martial.

Appellant similarly cites no legal norm or standard that was violated by the trial counsel's undertaking to prosecute Appellant in spite of SC's recantation, to include issuing and then serving a subpoena to secure her presence at trial. We find the applicable standards from the Air Force Rules of Professional Conduct (AFRPC) are not violated. It is "professional misconduct when a lawyer engage[s] in conduct involving dishonesty, fraud, deceit, or misrepresentation; [or] engage[s] in conduct that is prejudicial to the administration of justice." Air Force Instruction 51-110, *Professional Responsibility Program*, Attachment 2 (AFRPC), Rules 8.4(c) and (d) (5 Aug. 2014). The trial counsel did not violate the AFRPC by moving to admit SC's pre-recantation statements under the residual hearsay exception, R.C.M. 906(b)(13) (authorizing preliminary rulings on admissibility of evidence), or issuing and then serving a subpoena to secure the presence of a witness. R.C.M. 703(e)(2)(C)(2)(b) and (D). We therefore find no merit to Appellant's claims of prosecutorial misconduct.

### c. Providence of Plea of Guilty

Appellant's allegations are also in conflict with his statements on the record at trial and call for speculation as to how they invalidate his plea. "Once the military judge has accepted a plea as provident and has entered findings based on it, an appellate court will not reverse that finding and reject the plea unless it finds a substantial conflict between the plea and the accused's statements or other evidence of record." *United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F. 1996). "A 'mere possibility' of such a conflict is not a sufficient basis to overturn the trial results." *Id.* (quoting *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)). Moreover, we will not speculate on the existence of facts that might invalidate a plea especially where the matter raised post-trial contradicts an appellant's express admissions on the record. *United States v. Johnson*, 42 M.J. 443, 445 (C.A.A.F. 1995).

At trial, the military judge conducted a comprehensive inquiry not just of Appellant's plea, but, *inter alia*, his right to counsel and the PTA and stipulation of fact that Appellant signed. After the military judge read the elements and definitions of assault consummated by battery upon a child under the age of 16 years, Appellant acknowledged he understood that the elements and definitions accurately described his conduct. Appellant described in his own words how SC sat on his lap and he grabbed SC's buttocks under her clothes with his hand. Appellant volunteered he used very poor judgment, immediately felt remorseful, and pulled his hand out from under SC's pants. The military judge reviewed the stipulation of fact, which Appellant averred was accurate.

Appellant now alleges his plea was involuntary, but Appellant himself refuted this allegation by his statements at trial. He acknowledged that he was pleading guilty voluntarily and of his own free will, that no one had threatened him or in any way tried to force him to plead guilty, that he had a legal and moral right to plead not guilty, and that he could withdraw his plea at any time before sentence was announced. The military judge asked Appellant, "[A]re you pleading guilty not only because you have a hope to receive a lighter sentence, but also because you are convinced that you are in fact guilty?" Appellant replied, "I am."

Similarly, during the detailed colloquy with the military judge about the terms of the PTA, Appellant agreed that no one forced him in any way to enter into an agreement with the convening authority and that no one made any promises to him that were not written into the agreement in an effort to induce him to plead guilty. He indicated that he had discussed the PTA with his counsel, was satisfied with their advice, he entered into the agreement of his own free will, and that no one tried to force him into making the PTA. He acknowledged pleading guilty not only because he hoped to receive a lighter sentence, but also because he was convinced that he was, in fact, guilty.

Having examined the entire record with particular attention to Appellant's sworn responses during the plea inquiry, we are satisfied that Appellant knowingly, intelligently, and consciously waived his rights against self-incrimination, to a trial of the facts by a court-martial, and to confront the witnesses against him. The military judge did not abuse his discretion in accepting Appellant's plea and had no evident basis for rejecting it. Accordingly, we conclude Appellant's plea of guilty was voluntary and provident.

## B. Effective Assistance of Counsel

In a related but separate attack on his conviction, Appellant claims he was denied effective assistance of counsel because his trial defense counsel pressured him to plead guilty despite the fact that the Government had no evidence to corroborate his admissions he made to the AFOSI agents, much less any evidence that he assaulted his daughter. Appellant was prejudiced, he claims, because he was found guilty and forfeited both his freedom and 18 years of military service. If it were not for the pressure to plead guilty, he claims, "it is highly likely that the charge would have been dropped because the victim in the case had recanted and informed the Government that she had lied about Appellant assaulting her."[13] We are not persuaded by Appellant's claims.

---

[13] Brief of Appellant's appellate counsel.

### 1. Additional Background

On appeal, Appellant submitted a declaration along with the assignment of error alleging prejudice from deficient performance of his trial defense counsel. Appellant declared that before he decided to plead guilty, his counsel led him to believe his case would be "easy to win" or that counsel could get the charges dropped altogether. Appellant said he had been assured time and time again that once SC had recanted her allegation, the Government's case was weakened because it revolved around his false confession "made under extreme emotional distress and manipulation."

Appellant declared he was shocked when, the day before trial reconvened, his counsel suggested he try for a plea deal. Nonetheless, Appellant averred he told his counsel "to come back later once they had worked out some sort of deal." Appellant explained he felt he had no choice but to take a plea deal because his counsel told him that if he was found guilty of the Article 120b, UCMJ, offenses he would likely go to jail for several years and would have to register as a sex offender.[14] Appellant declared his counsel told him the deal to plead to the less severe Article 128, UCMJ, offense of assault consummated by battery on a child under the age of 16 years was his "best and safest choice." Appellant claimed his counsel "had given up and lost the will to fight," after assuring him his "case should be a relatively easy win." Hence, Appellant now claims he was inadequately represented because his counsel pressured him into pleading guilty.

In response to Appellant's claims, we ordered and received declarations from Appellant's trial defense counsel, Mr. DC and Major (Maj) RB,[15] which refute Appellant's claims and are generally consistent with one another. Both counsel averred they never made any assurance to Appellant that his case would be relatively "easy to win." Mr. DC's declaration explained that Appellant was well advised that there were "significant headwinds in his case including a confession to [AF]OSI, a fresh complaint that largely corroborated his confession, no credible motive for the complainant to lie, and an outcry witness." Mr. DC explained that the Defense consulted with an expert and examined the literature on the topic of false confessions, and that it was self-evident from the video the AFOSI agents made of Appellant's confession "that the conduct of [the agents] was well within the constraints" of the law. Mr. DC explained Appellant "wanted us to explore alternative dispositions" after "the

---

[14] In the words Appellant attributes to one of his counsel, he felt pressured to plead guilty so that he would not become "a red dot on a map."

[15] Major RB held the rank of captain at the time of Appellant's trial.

judge indicated [SC's] recantation testimony was a necessary predicate for any outcry testimony" from SC's friend.

Major RB's declaration explained in detail the change in the posture of the Government's case after the parties received the military judge's expected ruling on the admissibility of SC's pre-recantation out-of-court statements. Major RB relayed that the military judge indicated that if SC testified consistent with her recantation, the military judge was going to admit pursuant to the residual hearsay exception SC's outcry statements which she made to her friend the morning after the incident in question. The military judge similarly indicated that SC's statements to the AFOSI agents and the nurse examiner were potentially admissible if Appellant's confrontation rights were satisfied. Major RB explained that the military judge's anticipated ruling had two effects. First, SC's out-of-court statements would corroborate Appellant's confession to the AFOSI agents and overcome the defense motion to suppress that was before the court. Second, the trial counsel "now needed SC as a witness," and, Major RB surmised, trial counsel would serve a subpoena to compel SC's appearance against her will.

Major RB explained that he and Mr. DC informed Appellant of the developments, that Appellant's confession would be admissible, and SC would be a witness. Major RB declared, "[d]uring multiple discussions over the course of the next couple of days, leading through the weekend before trial, we discussed the way ahead with [Appellant]," to include "potential litigation strategy" "in light of the unfavorable ruling, as well as SC's now-definite involvement in the case." Major RB elaborated,

> During these multiple conversations, we explained [Appellant's] different options to him; we also reminded [Appellant] that he still had the opportunity to pursue some type of alternate disposition or pretrial agreement if he desired to do so. [Appellant] asked that we engage with the Government on the matter. We did as [Appellant] asked, ultimately securing the pretrial agreement. . . . At no point from the morning . . . when we learned of the judge's ruling [ ] through the afternoon . . . when we went on the record at trial [ ] did [Appellant] direct that we stop pursuing a pretrial agreement or that we withdraw from the pretrial agreement. Had [Appellant] done so, we would have followed his direction immediately; we were prepared to litigate the case.

Attached to Major RB's declaration was documentation of Appellant's decision to plead guilty dated the same day Appellant entered his pleas. Appellant acknowledged, *inter alia,* his decision to plead guilty pursuant to the terms of the PTA. Appellant also acknowledged that a finding of guilty to the Article 120b, UCMJ, offenses would subject him to a maximum term of confinement

of 50 years and registration as a sex offender. Appellant acknowledged he was aware these "decisions were [his] alone to make," and that he had "knowingly and voluntarily" made them.

**2. Law**

The Sixth Amendment to the United States Constitution[16] guarantees an accused the right to effective assistance of counsel. *Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (citation omitted), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984) (citations and footnote omitted). *See Gilley*, 56 M.J. at 124 (citing *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000)). Accordingly, we "will not second-guess the strategic or tactical decisions made at trial by defense counsel," *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009) (quoting *United States v. Anderson*, 55 M.J. 198, 202 (C.A.A.F. 2001)), and consider "whether counsel's performance fell below an objective standard of reasonableness." *United States v. Gutierrez*, 66 M.J. 329, 331 (C.A.A.F. 2008) (citations omitted).

We review allegations of ineffective assistance of counsel de novo. *Gooch*, 69 M.J. at 362 (citing *Mazza,* 67 M.J. at 474). "To prevail on an ineffective assistance claim, the appellant bears the burden of proving that the performance of defense counsel was deficient and that the appellant was prejudiced by the error." *United States v. Captain*, 75 M.J. 99, 103 (C.A.A.F. 2016) (citing *Strickland*, 466 U.S. at 698). We utilize the following three-part test to determine whether the presumption of competence has been overcome:

> 1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?
>
> 2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?
>
> 3. If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

*Gooch,* 69 M.J. at 362 (alteration in original) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

"An appellant must establish a factual foundation for a claim of ineffectiveness; second-guessing, sweeping generalizations, and hindsight will not suffice." *United States v. Davis*, 60 M.J. 469, 473 (C.A.A.F. 2005) (citing *United*

---

[16] U.S. CONST. amend. VI.

*States v. Key*, 57 M.J. 246, 249 (C.A.A.F. 2002)); *see also United States v. Alves*, 53 M.J. 286, 289 (C.A.A.F. 2000); *United States v. Gray*, 51 M.J. 1, 19 (C.A.A.F. 1999). When an appellant alleges deficient performance to challenge a plea of guilty, the appellant must show, under the second prong of the *Strickland* test, a reasonable probability that, absent counsel's deficient performance, he would have pleaded not guilty. *United States v. Ginn*, 47 M.J. 236, 246–47 (C.A.A.F. 1997) (citing generally *Hill v. Lockhart*, 474 U.S. 52 (1985)).

### 3. Analysis

Appellant paints a stark contrast between the posture of his defense in the months before trial on the merits and the days immediately prior, but presents no information to explain the external events unfolding during the weekend before trial that led to his decision to plead guilty. The declarations from his trial defense counsel explain these events and, along with the record, unequivocally demonstrate that Appellant's decision to plead guilty was an informed decision by an appellant who was not forced, coerced, or pressured by his counsel.

Appellant's counsel informed him of the risk of litigating the Article 120b, UCMJ, allegations. Appellant knew, based on his agreement with the convening authority, he could be sentenced to a bad-conduct discharge and 225 days confinement, which was substantially less exposure than he would face had he contested the charge and specifications that were initially referred. Whatever second thoughts Appellant may now have about his decision to enter into a PTA with the convening authority and plead guilty, we do not find the advice and assessment of the changed litigation risk he received from his counsel constituted deficient performance. Rather than constituting "pressure," the candid advice he received reveals counsel who were concerned for their client and offered well-reasoned advice based on their experience as defense attorneys.

Regarding the soundness of counsel's advice to accept the plea deal, we find neither deficient performance nor prejudice. Consideration of a plea deal was a suitable alternative to minimize the jeopardy Appellant faced from a litigated trial. This was an especially reasonable tactic considering the strength of the Government's case after the military judge's anticipated ruling allowing the admission of the out-of-court statements SC made prior to her recantation, and its attendant prospect of an unfavorable outcome for Appellant.

We find Appellant's claim of ineffective assistance of counsel to be without merit from not just an assessment of the declarations, but from an assessment of the trial itself. Appellant specifically told the military judge that he had enough time and opportunity to discuss his case and the PTA with his counsel. He stated that he had consulted fully with his counsel, had received the full benefit of their advice, and that he was satisfied both with his counsel and that

their advice was in his best interest. We find Appellant's statements at trial as well as the other matters in the record are consistent with and demonstrate the soundness of their advice.

The record in Appellant's case, particularly Appellant's sworn statements at trial, as well as the post-trial declarations of his trial defense counsel and the memorandum that Appellant initialed and signed the same day he pleaded guilty, compellingly demonstrates the improbability of Appellant's ineffective assistance of counsel allegation. *Ginn*, 47 M.J. at 248. We find no reason to reject Appellant's sworn statements on the record and find no reason to order an evidentiary hearing. *Id.* at 244–45; *see United States v. DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967). We further conclude from our review of the record of proceedings, appellate pleadings, and post-trial declarations, that Appellant was neither deprived of a fair trial nor was the trial outcome unreliable. *See Strickland*, 466 U.S. at 698. Accordingly, we find Appellant's claims of ineffective assistance of counsel to be without merit.

## C. Sentence Severity

Appellant claims that his sentence to a bad-conduct discharge is unduly severe considering the facts and circumstances of his offense, his character, and his 18 years and 8 months on active duty. Appellant avers that the facts surrounding the incident do not warrant a bad-conduct discharge. He notes he did not strike SC, there were no immediate or lasting injuries, and he was intoxicated. Appellant also notes he served on ten deployments and that his service record was spotless and distinguished, having never received any disciplinary action during his Air Force career before the incident.

Appellant's brief in support of the assigned error asks us to look past his plea of guilty to the fact that SC made a written statement that Appellant did not assault her. Appellant's brief renews his attack on the conviction claiming that SC made up the allegation so that she could see her boyfriend and, in a declaration to the court, maintains the punishment he received "was too harsh especially considering [he] did not commit any of the alleged offenses." Appellant also avers the military judge appeared to have inappropriately sentenced Appellant for sexually assaulting SC instead of assault under Article 128, UCMJ.

### 1. Additional Background

Before inquiring into the legal and factual sufficiency of Appellant's plea, the military judge explained that anything Appellant told him may be used against him in the sentencing portion of the trial. Appellant acknowledged that he understood. The military judge similarly explained that the stipulation of fact Appellant agreed to and signed would be used to determine if Appellant

was in fact guilty and an appropriate sentence as well. Appellant acknowledged he understood and agreed to both uses on the record and in the stipulation he signed.

**2. Law**

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we] find correct in law and fact and determine[ ], on the basis of the entire record, should be approved." Article 66(c), UCMJ. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). While we have great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 142–48 (C.A.A.F. 2010).

**3. Analysis**

As a threshold matter, we find no reason to conclude from the record that the military judge punished Appellant for the sexual assault and abusive sexual contact offenses that were withdrawn and dismissed by the convening authority.

Appellant's plea admitted the elements of the charged offense. Appellant told the military judge he grabbed SC's buttocks under her pants and underwear, and that his behavior showed "very poor judgment." As related in our resolution of Appellant's first assignment of error, Appellant stipulated he put his hand down SC's pants and touched her buttocks with his hand. Appellant remarked he "can't be this guy," pulled out his hand and said, "I can't do this, it isn't me." Appellant further stipulated he immediately felt "guilt and sorrow" for what he had done and later went to SC's bedroom "and told her not to tell her mom." Finally, Appellant stipulated, he realized "he had really messed up and just did the most regrettable[,] terrible thing he had ever done, and wanted SC to forgive him."

Appellant faced a maximum punishment of a dishonorable discharge, total forfeiture of pay and allowances, reduction to the grade of E-1, and confinement for two years. Trial counsel recommended a sentence of a bad-conduct discharge, confinement for ten months, and reduction to the grade of E-1. Trial defense counsel argued that no punitive discharge should be adjudged. Having given individualized consideration to Appellant, as well as the nature and seriousness of his offense as shown by the facts and circumstances, his record of service, and all other matters contained in the record of trial, we find Appellant's approved sentence of a bad-conduct discharge, confinement for four

months, and reduction to the grade of E-4 is not inappropriately severe as a matter of law.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.[17]

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[17] Although not raised by the parties, we note an error in the court-martial order (CMO) where the charged article is incorrectly identified as Article "120" rather than "120b." We also note an error in the inclusion of names of children ages 16 years and younger, which must be replaced by initials in the recitation of the action in the expurgated CMO, Air Force Instruction 51–201, *Administration of Military Justice*, ¶ 9.7.1.1 (8 Dec. 2017), notwithstanding general guidance that "the convening authority's action should be verbatim." *Id*. at ¶ 9.8.2.4. We direct the publication of a corrected CMO to remedy these errors.