# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39572**

————————————

**UNITED STATES**
*Appellee*

v.

**Rodney M. TYLER**
Master Sergeant (E-7), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 30 March 2020

————————————

*Military Judge:* Matthew D. Talcott (arraignment); Jefferson B. Brown.

*Approved sentence:* Bad-conduct discharge, confinement for 4 years and 6 months, and reduction to E-4. Sentence adjudged 30 June 2018 by GCM convened at Keesler Air Force Base, Mississippi.

*For Appellant:* Captain David A. Schiavone, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel Brian C. Mason, USAF; Major Thomas C. Franzinger, USAF; Mary Ellen Payne, Esquire.

Before MINK, LEWIS, and D. JOHNSON, *Appellate Military Judges.*

Judge D. JOHNSON delivered the opinion of the court, in which Senior Judge MINK and Judge LEWIS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

D. JOHNSON, Judge:

A general court-martial composed of officer members convicted Appellant, contrary to his pleas, of one charge and one specification of aggravated sexual abuse of a child, two specifications of indecent liberty with a child, and one specification of indecent act in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920;[1] and an additional charge and two specifications of sexual abuse of a child in violation of Article 120b, UCMJ, 10 U.S.C. § 920b.[2] The adjudged and approved sentence consisted of a bad-conduct discharge, confinement for four years and six months, and reduction to the grade of E-4. The convening authority directed that the mandatory forfeitures be waived for the benefit of Appellant's dependent child for a period of six months and otherwise approved the adjudged sentence.

On appeal, the sole issue raised by Appellant is whether the military judge erred when he permitted trial counsel to argue information from victim unsworn statements as if it was properly admitted as evidence in aggravation under Rule for Courts-Martial (R.C.M.) 1001(b)(4).[3] In addition, we considered the issue of timely post-trial processing. Finding no error materially prejudicial to a substantial right of Appellant, we affirm the findings and sentence.

## I. BACKGROUND

Appellant's court-martial centered on his actions toward his former step-daughter ML and his biological daughter MC. Appellant was convicted of intentionally touching ML's genitalia; playing pornographic videos and causing such videos to be viewed by ML; asking ML if she wanted to masturbate while watching a pornographic movie; and communicating indecent language to ML. Appellant was also convicted of committing an indecent act by requesting MC send him nude photographs of herself. We describe Appellant's actions with respect to each victim in turn.

---

[1] The aggravated sexual abuse of a child, indecent liberty with a child, and indecent act convictions were based on the version of Article 120, UCMJ, 10 U.S.C. § 920, in effect from 1 October 2007 through 27 June 2012, which can be found in the *Manual for Courts-Martial, United States*, App. 21, at A21-1–A21-2 (2019 ed.) (2019 *MCM*).

[2] The sexual abuse of a child convictions were based on the version of Article 120b, UCMJ, 10 U.S.C. § 920b, in effect from 28 June 2012 through 31 December 2018, which can be found in the 2019 *MCM*, App. 22, at A22-13–A22-15.

[3] Unless otherwise specified, all references in this opinion to the UCMJ and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2016 ed.).

**A. ML**

During the findings portion of trial, ML testified her mother deployed in 2010 when ML was 10 years old. At the time of the deployment, ML lived with Appellant as her mother was still married to him. ML stated one night she was scared by a thunderstorm and slept with Appellant and her younger sister in Appellant's bed. ML woke up to Appellant rubbing her genital area with his hand underneath her clothes and felt his hand on her skin. She testified that when she woke up to Appellant rubbing her she was "scared" and moved onto her side. Once she moved onto her side, Appellant stopped and removed his hand.

Sometime after ML's mother returned from deployment, Appellant showed ML pornographic videos for about an hour after ML's mother and sister had already gone to bed. ML testified that while the videos were playing Appellant "advised [her] to touch [her]self" on her "genitals" while Appellant was explaining "what was going on [on the television]."

In June 2015, when ML was 14 years old, after Appellant and her mother had divorced, Appellant messaged ML and asked her to send him a video or pictures of her genital area. A little over one month later, after ML had turned 15 years old, Appellant messaged her and asked "did you ever masturbate on your own?" Appellant also asked for pictures, which ML took to mean pictures of her body. When she refused, Appellant stated he would "pay her." ML refused again.

Investigation into Appellant's actions with ML began when ML reported to her aunt that Appellant was texting her inappropriately.

**B. MC**

The other victim in this case was Appellant's biological daughter MC. For reasons not relevant to this opinion, Appellant learned the existence of MC when she was already 3 years old. MC and Appellant did not have contact until Appellant sent her a letter shortly before MC's eleventh birthday. In 2008, when MC was 13 years old, Appellant emailed her asking her to send him nude pictures of herself with a specific request to see her breasts. MC showed her mother the messages. The next day, Appellant emailed MC and said "I'm sorry, I was drunk. I didn't mean to sent [sic] those, I was just drunk."

**C. Appellant's Testimony**

Appellant testified during findings that he never touched the genitals of ML, played pornographic videos for ML, or asked ML to masturbate while watching a pornographic video. When discussing the messages with ML, he stated he had no reason to doubt he sent them, but had no recollection of sending them and no recollection of the messages gratifying his sexual desires. Appellant also testified he had no recollection of sending MC inappropriate

3

emails. He stated that he has struggled with being an alcoholic since he was 16 years old and that he is a different person when he has been drinking. He stated he had blacked out while drinking "upwards of close to a hundred times" and described blacking out as only remembering "bits and pieces" of the night before, and sometimes, "not anything."

However, Appellant also testified to periods of sobriety. He specifically remembered the night ML alleged Appellant touched her because (1) there was only one time Appellant, ML, and his other daughter all slept in the same bed, and (2) he was sober. He stated he did not wake up at all that night, nor did he reposition himself. On cross-examination, Appellant testified he did tell investigators from the Air Force Office of Special Investigations (AFOSI) that he can "remember almost every night" if he is not drinking and further testified he could remember "many nights when I'm sober." He later admitted during cross-examination he "obviously [could not] remember every single thing of every single night."

## II. DISCUSSION

### A. Improper Argument

#### 1. Additional Background

Both ML and MC testified during the findings portion of the trial. During presentencing, both elected to present written, unsworn victim impact statements pursuant to R.C.M. 1001A and to read their written statements nearly verbatim to the members. Prior to reading the statements to the members, the written statements were properly marked as court exhibits and trial defense counsel objected to certain portions of both statements. The military judge overruled the one objection to ML's statement. The military judge overruled some of trial defense counsel's objections to MC's statement. For those portions where the military judge stated he concurred with trial defense counsel's concerns, MC elected to amend her statement.

ML provided the following oral statement to the members:

> The things that my ex-stepfather [Appellant] has done to me have affected me and my life in many ways. I used to be able to trust him as he was more of a father to me than my own biological father was. Because he took advantage of me I now have trust issues not just with men, but every friendship or relationship that I have and that I may have in the future. I was so young when he started to do these things to me. He has ruined my innocence of [being] a child. I experienced traumatic events and saw things that most kids my age at that time may have not . . . may not have seen or known. I felt corrupted as a child

because I knew about sex when other kids my age did not. This made it harder for me to make friends and connect with kids my age. My mother and I have always had a close mother/daughter relationship. What [Appellant] did has made me keep things from my own mother, which hindered our relationship. As a result of the things that he has done to me, he has made me feel worthless and less of a person. I feel that if he is punished for the disgusting and cruel things that he has done to me, I'll be able to move past this and get on with my life to be a successful adult. I will finally be able to let go of this part of my past and move on. Thank you for your time and consideration.

(Third alteration in original).

MC provided the following oral statement to the members:

My name is [MC]. When I first reached out . . . was first reached out to by [Appellant], I was hopeful that I would finally get to have a father figure in my life, a chance to have someone to take to father/daughter dances and someone to ask for advice. When he asked for nude pictures of me . . . a nude picture of me, when I was 14, I first felt angry. No father should ever see his daughter in a sexual way. I don't think it was appropriate, let alone okay. I was confused because he has no problem asking his own biological daughter for a nude picture. The request made me feel like he was no longer a father figure. He was barely a father and ruined what little father/daughter relationship we had. I lost all respect for him.

(Second and fourth alterations in original). The written unsworn statements were provided to the members.

Appellant also elected to provide a written unsworn statement to the members. Trial counsel objected to several portions of the statement, but the military judge admitted it as a defense exhibit.

Prior to sentencing arguments, the military judge properly instructed the members that "an unsworn statement is an authorized means for a victim to bring information to the attention of the court and must be given appropriate consideration" and that "the weight and significance to be attached to an unsworn statement rests within the sound discretion of each court member." The military judge gave a similar instruction regarding Appellant's unsworn statement.

Trial counsel began her sentencing argument:

"Given what little father/daughter relationship we had, I lost all respect for him." "He has ruined my innocence as a child." "He

5

has made me feel worthless and less of a person." Those are the words of [ML] and [MC] from the statements that they provided you. Those words describe how they felt. How they were impacted by [Appellant]'s actions, by his crimes against them. That's how he made those girls feel. Afraid. That is how [ML] felt, when she was 10 years old and she woke up in a bed, feeling the sensation of an adult male --

At which point trial defense counsel objected for "facts not in evidence." The military judge overruled the objection and then instructed the members:

I'll just remind . . . very similar to argument in findings. Since the argument is not evidence but it is counsel's belief on what the evidence was, and reasonable inferences from it, and so you just need to go back and you need to consider what you recall the evidence to be, as well as any inferences from that.

(Alteration in original).

Trial defense counsel then stated, "We're specifically referencing portions contained in the unsworn statements," at which point the military judge excused the members. The military judge then held a session outside the presence of the court members pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839(a).

After the members left the courtroom, the following exchange occurred:

MJ [military judge:] . . . Let me just make sure I understand your objection a little bit more. Specifically, what are you objecting to, which argument?

. . . .

DC [trial defense counsel]: Your Honor, it's the reference to the victim impact statements as if they are evidence. She's . . . the trial counsel specifically just stated that is the way that, you know, such and such person felt. That is the effect that it had on her. That is just . . . that's not evidence, and it can't be brought to the, you know, panel's attention in that manner. The victims certainly have the right to be heard, and they brought it to the attention . . . to the panel's attention, but those . . . it's not evidence, and it can't be argued that way.

MJ: Alright, let me ask you a question. Is the . . . is it your position that the Defense Counsel . . . can the Defense Counsel reference aspects of an Accused's unsworn statement during their argument?

DC: Reference, yes, Your Honor.

MJ: Okay.

DC: And that's why, when the Trial Counsel initially began reciting what was in the victim impact statement, there was no objection. Simply reference to it is certainly permissible. But arguing it as if it's evidence is what . . . where it crosses the line.

MJ: Response, Government?

STC [senior trial counsel]: Your Honor, I think it was . . . I quoted them, and that's referencing them and I quoted the source of the quote was the victim impact statement, so I certainly wasn't arguing that it was evident that – [inaudible].

MJ: Well, a couple of things. I will overrule the objection. Thank you for the clarification. There are certain aspects, definitely an unsworn statement, that are collateral and would normally not be allowed outside the context of an unsworn statement, and in that area, Defense Counsel, arguably, I'm not ruling on it, may be significantly more limited in arguing that in any form or fashion. However, the . . . although it's presented, for instance, victim impact, as well as a lot of the Accused's information in an unsworn statement is presented in that particular format, it is something that could be directly related to resulting from the offense or to the extent of the Accused, is proper extenuation and mitigation evidence even though it was found within an unsworn statement. I have instructed, and the members certainly may consider that, regardless of whether we, in our lawyerly fashion, call it evidence or not, but we can . . . we can discuss the distinction probably all day, regarding the difference between what is evidence and what is something that someone can consider, but certainly in the context of this, I will allow the Trial Counsel to argue information in the unsworn statement that would be . . . the same information that would otherwise be properly admissible if offered in the Government's case-in-chief. And I will do the same for you, Defense.

. . . .

DC: Your Honor, we extend our objection to any future reference to those statements as if they're evidence. The victims in this case had the choice between testifying under oath, and bringing these matters to the panel's attention through an unsworn statement. They chose the latter, and so we would continue to make this objection.

> MJ: Your objection is preserved, and it will be clear for the record, that failure to object from this point forward will not constitute waiver and you have sufficiently preserved any objection as to that.

[Fifth through eleventh and thirteenth through seventeenth alterations in original].

At that point the military judge had the members return to the courtroom, overruled the objection, and again reminded them that "this is the argument of counsel, but ultimately you must resolve the questions before you based on the facts and information before you as you recall it."

Appellant asserts the military judge erred when he permitted trial counsel to argue information from unsworn statements as if it were evidence properly admitted under R.C.M. 1001(b)(4), arguing the military judge admitted "no testimony or evidence that could be characterized as victim impact evidence." Further, Appellant argues that the military judge "opted" for a "blanket authorization" for the trial counsel to argue facts not in evidence, as long as the information "*could have* been admitted properly." Finally, Appellant argues that the trial counsel began with the victim unsworn statements and argued them throughout the sentencing argument and rebuttal. Appellant contends that he suffered prejudice because "the trial counsel centered her argument around information from the victim unsworn statements."

In addition to the beginning of trial counsel's sentencing argument quoted above, Appellant asserts the following statements from trial counsel's argument were improper:

> Corrupted, that's how [ML] felt when she was exposed to pornography for an hour, when she had to stare at that screen and listen to her stepfather explain to her the sexual acts that were taking place in front of her eyes.
>
> . . .
>
> Angry, confused, that's how [MC] felt when she received that request from [Appellant], her biological father.
>
> . . .
>
> The earliest of the offenses that [Appellant] committed happened in 2008, against [MC], that's when he started damaging her. And then in 2010, is when he started damaging [ML]. So for eight years, 10 years, while they're suffering the consequences of what he's done to them, he feels nothing.
>
> . . .

> Sexual crimes can be the most egregious, and that is because of the impact that they have on the victim. They strip the person of everything, their dignity, their self-worth; being touched while asleep, being forced to watch explicit sexual content, being spoken to, or texted in the ways those girls were texted.
>
> . . .
>
> The crime is about more than just words because of the way that it impacted [ML] and [MC].

(First through third, fifth, and eighth through twelfth alterations in original).

Appellant also notes the trial counsel used ML's unsworn statement to argue that Appellant "robbed those girls of their innocence, of their childhood," and told the court members, "when people like you are looking in the other direction, [Appellant] is completely different from the person that he has shown himself to be to those innocent girls, completely different. To them he was . . . he was their monster."

Finally, Appellant avers trial counsel used the unsworn impact statements to justify asking for a higher sentence to confinement, specifically pointing to the following excerpts from trial counsel's argument:

> "[ML] and [MC] have been dealing with the consequences of his actions for years now, and they're still dealing with that today. And for him not to have to account for that pain that he's caused in a meaningful and proportional way, that is unjust, and that is unfair.
>
> . . .
>
> "to account for the pain that he's caused."
>
> . . .
>
> "the pain that he's caused them for a decade . . . ."

(First and second alterations in original).

Appellant concludes he suffered prejudice because the trial counsel appropriated the victims' allocution to the detriment of Appellant, and trial counsel was "erroneously allowed to argue information not in evidence to appeal to the members' emotions and persuade them to sentence the Appellant more harshly."

The Government responds that Appellant failed to show that the military judge permitted trial counsel to make an "erroneous" argument or that he suffered material prejudice to any substantial right.

We find no error materially prejudiced a substantial right of Appellant.

**2. Law**

Improper argument is a question of law that this court reviews de novo. *United States v. Marsh*, 70 M.J. 101, 106 (C.A.A.F. 2011) (citation omitted). When preserved by an objection, an allegation of improper argument is reviewed to determine whether the military judge's ruling constitutes an abuse of discretion. *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (citing *United States v. Hornback*, 73 M.J. 155, 159 (C.A.A.F. 2014); Article 59(a), UCMJ, 10 U.S.C. § 859(a)). If a proper objection is not made we test for plain error. *United States v. Halpin*, 71 M.J. 477, 479 (C.A.A.F. 2013) (citation omitted). "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice to a substantial right of the accused." *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005) (citation omitted). The burden of proof under a plain error review is on the appellant. *See Sewell*, 76 M.J. at 18 (citation omitted). "Both standards . . . culminate with an analysis of whether there was prejudicial error." *United States v. Andrews*, 77 M.J. 393, 401 (C.A.A.F. 2018) (citation omitted).

"Improper argument is one facet of prosecutorial misconduct." *Sewell*, 76 M.J. at 18 (citation omitted). "Prosecutorial misconduct occurs when trial counsel 'overstep[s] the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense.'" *Hornback*, 73 M.J. at 159 (alteration in original) (quoting *Fletcher*, 62 M.J. at 179). Such conduct "can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, [for example], a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *Id.* at 160 (quoting *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996)).

Improper argument does not automatically require a new trial or the dismissal of the charges against the accused. *Fletcher*, 62 M.J. at 178. Relief will be granted only if the trial counsel's misconduct "actually impacted on a substantial right of an accused (i.e., resulted in prejudice)." *Id.* (quoting *Meek*, 44 M.J. at 5).

The United States Court of Appeals for the Armed Forces (CAAF) recommended balancing three factors to assess whether misconduct impacted the appellant's substantial rights and the integrity of his trial: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." *Id.* at 184. The *Fletcher* court did not articulate how much weight to give each factor. *United States v. Pabelona*, 76 M.J. 9, 12 (C.A.A.F. 2017).

The CAAF extended the *Fletcher* test to improper sentencing argument in *Halpin*, 71 M.J. at 480. In applying the *Fletcher* factors in the context of an allegedly improper sentencing argument, we consider whether "'trial counsel's

comments, taken as a whole, were so damaging that we cannot be confident' that [the Appellant] was sentenced 'on the basis of the evidence alone.'" *Id.* at 480 (alteration in original) (quoting *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007)). The CAAF in *United States v. Frey* defined the third factor as "the weight of the evidence supporting the sentence." 73 M.J. 245, 249 (C.A.A.F. 2014) (citation omitted).

Trial counsel is entitled "to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000) (citation omitted). It is improper for trial counsel to make arguments that "unduly . . . inflame the passions or prejudices of the court members." *Frey*, 73 M.J. at 248 (alteration in original) (quoting *Marsh*, 70 M.J. at 102). Trial counsel may also argue for an appropriate sentence, recommend a specific lawful sentence, and may also refer to generally accepted sentencing philosophies, including rehabilitation of the accused, general deterrence, specific deterrence of misconduct by the accused, and social retribution. R.C.M. 1001(g).

"Article 6b, UCMJ, 10 U.S.C. § 806b provides victims of UCMJ offenses the 'right to be reasonably heard' at a sentencing hearing related to the crime in which they were the victim." *United States v. Hamilton*, 78 M.J. 335, 339 (C.A.A.F. 2019) (quoting Article 6b(a)(4)(B), UCMJ, 10 U.S.C. § 806b(a)(4)(B)). The President promulgated R.C.M. 1001A to "facilitate[ ] the statutory right 'to be reasonably heard.'" *Id.* (citing *United States v. Barker*, 77 M.J. 377, 378 (C.A.A.F. 2018)). A victim may make a sworn or unsworn statement during sentencing in a non-capital case. R.C.M. 1001A(b)(4)(B). The contents of the statements may include "victim impact or matters in mitigation." R.C.M. 1001A(c). Victim impact includes "any financial, social, psychological, or medical impact on the victim directly relating to or arising from the offense of which the accused has been found guilty." R.C.M. 1001A(b)(2). Under R.C.M. 1001A, a victim exercises the right to be reasonably heard by either offering an unsworn victim impact statement in person, or through a designated advocate as R.C.M. 1001A requires. *See Hamilton*, 78 M.J. at 337.

R.C.M. 1001(b)(4) permits trial counsel to "present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty." Such evidence "includes but is not limited to, evidence of . . . social, psychological, and medical impact on or cost to any person . . . who was the victim of an offense committed by the accused . . . ." *Id.* Victim impact evidence under R.C.M. 1001(b)(4) must comply with the Military Rules of Evidence, *Hamilton*, 78 M.J. at 341 (citing *United States v. Saferite*, 59 M.J. 270, 273 (C.A.A.F. 2004)); and Article 42(b), UCMJ, 10 U.S.C. § 842(b), directs that "each witness before a court-martial shall be examined on oath."

### 3. Analysis

As an initial matter, the trial defense counsel specifically did not object when the trial counsel quoted directly from the victim impact statements. While explaining his objection, trial defense counsel clarified that "when the Trial Counsel initially began reciting what was in the victim impact statement, there was no objection. Simply reference to [the victim impact statement] is certainly permissible." We agree. Therefore, we find, absent plain error, Appellant waived any objection to the following statements by trial counsel: "Given what little father/daughter relationship we had, I lost all respect for him;" "He has ruined my innocence as a child;" and "He has made me feel worthless and less of a person." Under the facts and circumstances of this case we find no plain or obvious error with these statements.

Second, we disagree with Appellant that trial counsel had "no evidence in the record" from which she could derive the arguments she made regarding the impact that Appellant's offenses had on ML and MC. We find the vast majority of argument which Appellant now contends is improper directly references evidence properly before the members, or reasonable inferences therefrom, and is therefore proper argument. *See Baer*, 53 M.J. at 237.

Appellant contends trial counsel's argument, "Afraid. That is how [ML] felt, when she was 10 years old and she woke up in a bed, feeling the sensation of an adult male," was improper argument. However, ML testified during findings that when she was 10 years old she woke up to Appellant touching her and she felt "scared." "Afraid" and "scared" are synonyms and combined with facts from the findings testimony the argument is not improper because the statement is a reasonable inference from the evidence at trial. Likewise, the arguments "[ML] and [MC] have been dealing with the consequences of his actions for years now, . . . that is unjust, and that is unfair;" "to account for the pain that he's caused;" and "the pain he has caused them for a decade" were references to the testimony from findings and could have been argued irrespective of whether ML and MC made victim impact statements. Unless otherwise addressed in the analysis, we also find the remainder of the statements that Appellant avers are improper directly reference evidence before the members or fair inferences therefrom and therefore proper argument.

Arguably two of the statements which Appellant avers improper are hybrids of fair inferences from the evidence before the members and direct quotes from the victim impact statement, both proper as discussed above. For example, in the excerpt, "Corrupted, that's how [ML] felt when she was exposed to pornography for an hour, when she had to stare at that screen and listen to her stepfather explain to her the sexual acts that were taking place in front of her eyes," the word "corrupted" is a direct quote from ML's victim

impact statement. However, the majority of the remainder of the statement is from ML's testimony during findings. It is a reasonable inference—and therefore proper argument—that a child who is forced to watch a pornographic video with their stepfather is "corrupted." Similarly, "Angry, confused that's how [MC] felt when she received that request from [Appellant], her biological father," is another statement that is a hybrid. MC stated in her unsworn statement that she was "angry" because "no father should ever see his daughter in a sexual way, and "confused because [Appellant] has no problem asking his biological daughter for a nude picture." The words "angry" and "confused" are direct quotes from the victim impact statement but are also fair inferences from findings testimony. For example, trial defense counsel conducted an extensive cross-examination of MC about her feelings towards Appellant. Based on that cross-examination, it is clear that MC was "angry" with Appellant.[4] Further, it is a reasonable inference that MC would be confused as to why her father was asking her for inappropriate pictures.

For the remaining portion of the argument Appellant avers trial counsel's statement ". . . he was their monster" was improper—assuming without deciding that it was improper argument we will test for prejudice under *Fletcher* and *Halpin*. In addition, assuming *arguendo* there was error in all the statements Appellant contends were improper, we will test for prejudice.

### a. Severity of the Misconduct

We do not find the misconduct in this case to be severe. The CAAF in *Fletcher* applied five indicators to determine the severity of the misconduct, only two of which are relevant for our analysis.

The first indicator is "the raw numbers—the instances of misconduct as compared to the overall length of the argument." *Fletcher*, 62 M.J. at 184 (citation omitted). The alleged improper argument consisted of approximately 52 of 432 lines in the transcript in the initial argument and 1 line of the 73 lines of argument in rebuttal. When looking at the raw numbers the alleged improper argument does not appear that egregious, but the lines are interspersed throughout the argument. As such, we find this indicator marginally in favor of Appellant.

The second indicator from *Fletcher* is "whether the misconduct was confined to the trial counsel's rebuttal or spread throughout the whole findings

---

[4] MC admitted during cross-examination that she told other individuals she wanted Appellant "to burn for all the mean things he's said and done;" she wanted him to "get what he deserves;" she "want[ed] to see [him] get in trouble because it's been a long time coming;" she "want[ed] to see justice for [herself];" and she "want[ed] him to realize his actions have consequences." She further testified that she thought that "anybody who does anything to anybody that's a child deserves to be punished."

argument or the case as a whole." *Id.* (citation omitted). This indicator warrants some adjustment as we are evaluating a sentencing argument. The alleged improper argument was confined to the sentencing argument and rebuttal. As noted above, the alleged improper argument is interspersed throughout the sentencing argument, however, only consists of one line in rebuttal. In addition, there are no accusations of misconduct from the entire findings portion of the trial which covers the first 857 pages of an 889 page transcript. On the whole, this indicator weighs in favor of the Government.

The majority of trial counsel's argument was from the evidence of record and from reasonable inferences fairly derived therefrom. This lessened the severity. In resolving this issue we did consider the fact that the allegedly improper argument revolved around the victim impact statements. After weighing the indicators, we find this factor favors the Government.

### b. Measures Adopted to Cure the Misconduct

When the objection occurred, the military judge stated:

> I'll overrule the objection, but in doing so I'll just remind . . . very similar to argument in findings. Since the argument is not evidence but it is counsel's belief on what the evidence was, and reasonable inferences from it, and so you just need to go back and you need to consider what you recall the evidence to be, as well as any inferences from that.

(Alteration in original). In addition, when the members returned the military judge stated, "[T]his is the argument of counsel, but ultimately you must resolve the questions before you based on the facts and information before you as you recall it."

The military judge provided two instructions. "We presume, absent contrary indications, that the panel followed the military judge's instructions." *Sewell*, 76 M.J. at 19. We find this factor weighs in favor of the Government.

### c. Weight of the Evidence Supporting the Sentence

Though *Fletcher* recommended balancing all three factors, "it did not assign a particular value to each or comment on whether they should be weighed equally." *Frey*, 73 M.J. at 251. "In *Halpin*, [the CAAF] found that the third factor weighed so heavily in favor of the government that it could be fully confident the appellant was sentenced on the basis of the evidence alone." 71 M.J. at 480. In this case, as the CAAF did in *Halpin*, we find that the third *Fletcher* factor—the weight of the evidence supporting the conviction—weighs so heavily in favor of the Government that we are confident that Appellant was sentenced on the basis of the evidence alone.

Appellant's misconduct could have resulted in him being sentenced to the maximum sentence of a dishonorable discharge, 85 years of confinement, total forfeitures of pay and allowances, and reduction to the grade of E-1. The trial counsel argued for a dishonorable discharge, 20 years of confinement, total forfeitures, and reduction to the grade of E-1. Appellant argued for no more than one year in confinement. Appellant was sentenced to bad-conduct discharge, confinement for four years and six months, and reduction to the grade of E-4.

The Government's sentencing case was strong. First, the victims in this case were Appellant's stepdaughter and biological daughter. Second, the Government's documentary evidence included: (1) Appellant's prior special court-martial conviction for damage to military property, driving while intoxicated, and leaving the scene of an accident in which Appellant received a bad-conduct discharge (commuted to six months of confinement), 75 days of confinement, and reduction to the grade of E-1; (2) a letter of reprimand for sending a civilian co-worker inappropriate sexual comments via text (which the trial counsel highlighted occurred after he had been interviewed by the AFOSI for the charges for which he was convicted in this court-martial); and (3) a letter of reprimand Appellant received as a Master Sergeant for submitting three false bullets for his enlisted performance report (EPR). In addition, Appellant testified in findings and the members were instructed on mendacity at sentencing.[5] The trial counsel also admitted Appellant's EPRs which included two referral EPRs; however, the majority of Appellant's EPRs were overall "5" ratings. Although the Defense submitted three strong character letters and several other notable accomplishments of Appellant, the weight of the Government's evidence at trial clearly outweighed Appellant's sentencing evidence.

---

[5] The military judge instructed the members:

> If you believe the evidence raised the question of whether the Accused testified falsely before this court under oath, consider this. No person, including the Accused, has a right to seek to alter or affect the outcome of a court-marital by false testimony. You are instructed that you may consider this issue only within certain constraints. First, this factor should play no role whatsoever in your determination of an appropriate sentence unless you conclude the Accused did lie under oath to the court. Second, such lies must have been, in your view, willful and material, meaning important, before they can be considered in your deliberations. Finally, you may consider this factor insofar as you conclude that it, along with all the other circumstances in the case, bears upon the likelihood that the Accused can be rehabilitated. You may not mete out additional punishment for the false testimony itself.

Even if each statement Appellant alleges was improper argument was in fact error, we find the weight of the evidence clearly supported the adjudged and approved sentence. As Appellant was not prejudiced by the sentencing argument, he cannot have been prejudiced by the military judge's ruling. *See Halpin*, 71 M.J. at 480 (finding that where an appellant was not prejudiced by the sentencing argument he "cannot have been prejudiced by the military judge's failure to interrupt the arguments or issue a curative instruction" (citation omitted)).

## B. Post-Trial Delay

### 1. Additional Facts

Appellant's court-martial concluded on 30 June 2018 at Keesler Air Force Base (AFB), Mississippi. The convening authority, also located at Keesler AFB, took action 125 days later on 2 November 2018. The base legal office included in the record of trial a "*Moreno* Timeline" memorandum which provides a chronology for this case. We describe this memorandum in more detail below.

### 2. Law

In *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006), the CAAF established a presumption of unreasonable post-trial delay when the convening authority does not take action within 120 days of trial, where a record of trial is not docketed with the service court within 30 days of the convening authority's action, and where this court does not render a decision within 18 months of the case being docketed.

The CAAF has identified four factors to consider in determining whether post-trial delay amounts to a violation of due process rights: (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of his right to a timely review; and (4) prejudice to the appellant. *Id.* at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005); *Toohey v. United States*, 60 M.J. 100, 102 (C.A.A.F. 2004)). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* (citing *Barker v. Wingo*, 407 U.S. 514, 533 (1972)). However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

### 3. Analysis

As described above, the lapse of time between Appellant's court-martial and action by the convening authority exceeded the *Moreno* standard by five days, establishing a facially unreasonable delay. *See Moreno*, 63 M.J. at 142. The "*Moreno* Timeline" provides insight into the reasons for the five-day delay. Having reviewed the timeline, we find the reasons for the delay to be

16

reasonable. For example, the court reporter attended a funeral for two days; there were two victims upon which to serve the record of trial (ROT) and staff judge advocate's recommendation (SJAR); and Appellant signed for the ROT and SJAR on 19 October 2018 starting the ten-day period to submit clemency under R.C.M. 1105, but his clemency submission is dated 1 November 2018. Appellant has not alleged any particular prejudice from the delay, and we find none. Balancing the remaining factors, we do not find the delay so egregious as to adversely affect the public perception of the fairness of the military justice system. *See Toohey*, 63 M.J. at 362. Therefore, we find no due process violation.

Next we consider whether Article 66(c), UCMJ, 10 U.S.C. § 866(c), relief pursuant to *United States v. Tardif* is appropriate. *See* 57 M.J. 219, 224 (C.A.A.F. 2002). We are guided by factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), with no single factor being dispositive.[6] Balancing the factors, we conclude no extraordinary exercise of our Article 66(c) authority is warranted here. Considered as a whole, Appellant's case has not been subject to excessive delay and we discern no particular harm to Appellant. We observed no evidence of bad faith or gross indifference to the overall post-trial processing of the case. The delay has not lessened the disciplinary effect of Appellant's sentence. The delay has not adversely affected this court's ability to review Appellant's case or grant him relief, if warranted. These circumstances do not move us to reduce an otherwise appropriate sentence imposed by the members and approved by the convening authority.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

---

[6] These factors include: (1) How long the delay exceeded the standards set forth in *Moreno*; (2) What reasons, if any, the Government set forth for the delay, and whether there is "any evidence of bad faith or gross indifference to the overall post-trial processing of this case;" (3) "Keeping in mind that our goal under *Tardif* is not to analyze for prejudice," whether there is "nonetheless some evidence of harm (either to the appellant or institutionally) caused by the delay;" (4) Whether the delay has "lessened the disciplinary effect of any particular aspect of the sentence," and whether relief is "consistent with the dual goals of justice and good order and discipline;" (5) Whether there is "any evidence of institutional neglect concerning timely post-trial processing, either across the [S]ervice or at a particular installation;" and (6) Given the passage of time, whether "this court can provide meaningful relief in this particular situation." *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016).

Accordingly, the findings and the sentence are **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court